FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT 42 U.S.C. § 1983
AND 42 U.S.C. § 1985(2)(3), SEEKING CIVIL RICO
UNDER 18 U.S.C. § 1964(C) SEEKING GRAND JURY
INVESTIGATION AND JUSTICE DEPARTMENT INTERVENTION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 24 2007

JAMES W. McCORMACK, CLERK
By:_____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

Charles Alexander/Ryahim, ADC# 111057
_____
_____

(Enter above full name of the Plaintiff,
Or Plaintiffs in this action)

V.

Case No: 4:07CU 1063 JLH

Berwin Monroe, Dr. Frank Peretti,
John Langston, John Ray White,
Elizabeth Thomas, Melanie Martin,
Eric Knowles, A. Hamby, M. Owens,
Melvin Vester, Ray, David Simpson,
Marcus Johnson, Don Trimble,
Dana A. Reece, LaQuita Butler,
Joseph Williford, Ernie Bailey,
Tina Gaston, Bobby Buzbee,
Pam Savicki, Susan Goodwin,
Vonda Odom, Melvin Ledbetter,
Jean Dabbs, Lambert Dyer, Susan Grady
Calvin Covington, Arthur Stoker, Gail Anderson,
Carolyn Staley, Linda Hudson, Officer Holt,
Laura Protchet, Robin Terry, Mickey Holloway,
Officer Johnston, Arkansas State Crime Lab,
Little Rock Police Department, Pulaski County

This case assigned to District Judge _____
and to Magistrate Judge _____

(Enter above full name of the Defendant,
Or Defendants in this action)

I.    Previous Lawsuits:

   A. Have you begun other lawsuits in state or federal court
      dealing with the same facts in this action?

        YES:      X              NO: _____

   B. If your answer to "A" is yes, describe each lawsuit in the

1

space below. (If there is more than one lawsuit, describe
the additional lawsuits on another piece of paper, using
the same outline.)

1.  Parties in this lawsuit:

    Plaintiffs: Charles Alexander/Ryahim ADC# 111057

    Defendants: John Langston Et. Al.

2.  Court (if federal court, name the district: if state
    Court name the county): Eastern District
    of Arkansas, Western Division

3.  Docket Number: 4:06CV00845

4.  Name of Judge to whom case was assigned: Honorable
    District Judge Ms. Wright and Honorable Magistrate
    Judge Cavaneau

5.  Disposition: (for example: Was the case dismissed? Was
    It appealed?  Is it still pending?)_____ The case
    Was dismissed

6.  Approximate date of filing lawsuit: July 21, 2006

7.  Approximate date of deposition: September 5, 2006

II.   Place of confinement: Varner Supermax Unit "VSM", Grady,
      Arkansas

III.  There is a prisoner grievance procedure in the Arkansas
      Department of Correction.  Failure to complete the grievance
      procedure may affect your case in Federal Court.

      A. Did you present the facts relating to your complaint in the
         state grievance procedure?

                  YES: _____      NO:  ___X_____

      B. If your answer is "YES", attach copies evidencing completion
         of the final step of the grievance appeal procedure.  Failure
         to attach the required copies may result in the dismissal of
         your complaint.

      C. If your answer is "NO", explain why not: (1) The Plaintiff
         is entitled to immediate civil and criminal action, due
         to:(a) The Plaintiff's factual allegations and
         material     facts submit sufficient allegations and
         sufficient        evidence of chain conspiracy, providing

2

a provision for immediate civil and criminal prosecution
superseding **Heck v. Humphrey** for proven innocent persons
(2) In that **Heck** based its holding on the rule applied
in cases involving  the Tort of Malicious Prosecution.
The court did not say the rule applied to a valid civil
rico violation claim:   (a) In that a valid civil rico
violation claim impedes    the Plaintiff from being able
to remove the **Heck Bar** and  have the Criminal conviction
overturned and expunged.

IV.    Parties
       (In item "A" below, place your name in the first blank and place
       your present address in the second blank.  Do the same for
       additional plaintiff if any.)

       A. Name of Plaintiff: Charles Alexander/Ryahim, ADC# 111057

          Address: Varner Supermax Unit ("VSM"), P. O. Box 400
          Grady, Arkansas 71644-0400

          Name of Plaintiff:

          Address:

V.     (In item "B" below, place full names of the defendant in the
       first blank, his official position in the second, his place of
       employment in the third blank and his address in the fourth.)

       **Defendant:** Berwin Monroe

       Position: Firearm and Toolmark Specialist

       Place of employment: Arkansas State Crime Laboratory

       Address: P. O. Box 5274 Number 3 Natural Resources Drive
       Little Rock, Arkansas 72215

       **Defendant:** Dr. Frank Peretti

       Position: Autopsy Specialist

       Place of employment: Arkansas State Crime Laboratory

       Address: P. O. Box 5274 Number 3 Natural Resources Drive
       Little Rock, Arkansas 72215

       **Defendant:** John Langston

3

Position: Pulaski County Circuit Judge, Fourth Division

Place of employment: Pulaski County Courthouse

Address: 401 West. Markham Street, Suite 440, Little Rock, Arkansas 72201

**Defendant:** John Ray White

Position: Deputy Prosecuting Attorney

Place of employment: Pulaski Co. Prosecuting Attorney Office

Address: 122 South Broadway, Little Rock, Arkansas 72201

**Defendant:** Elizabeth Thomas

Position: Deputy Prosecuting Attorney

Place of employment: Pulaski Co.Prosecuting Attorney Office

Address: 122 South Broadway, Little Rock, Arkansas 72201

**Defendant:** Melanie Martin

Position: Deputy Prosecuting Attorney

Place of employment: Pulaski Co. Prosecuting Attorney Office

Address: 122 South Broadway Little Rock, Arkansas 72201

**Defendant:** Eric Knowles

Position: Detective Division

Place of employment: Little Rock Police Department

Address: 700 West Markham Street, Little Rock, Arkansas 72201

**Defendant:** A. Hamby

Position: Detective Division

Place of employment: Little Rock Police Department

Address: 700 West Markham Street, Little Rock, Arkansas 72201

**Defendant:** M. Owens

Position: Detective Division

Place of employment: Little Rock Police Department

Address: 700 West Markham Street, Little Rock, Arkansas 72201

**Defendant:** Melvin Vester

Position: Detective Division

Place of employment: Little Rock Police Department

Address: 700 West Markham Street, Little Rock, Arkansas 72201

**Defendant:** Ray

Position: Detective Division

Place of employment: Little Rock Police Department

Address: 700 West Markham Street, Little Rock, Arkansas 72201

**Defendant:** David Simpson

Position: Detective Division

Place of employment: Little Rock Police Department

Address: 700 West Markham Street, Little Rock, Arkansas 72201

**Defendant:** Marcus Johnson (a/k/a Marquis DeWayne Jones)

Position: Culprit

Place of employment: N/A

Address: 2100 Pulaski Street, Little Rock, Arkansas 72201

**Defendant:** Don Trimble

Position: Attorney-at-law

Place of employment: Same

Address: 1124 Martin Luther King Jr. Drive, Little Rock, Arkansas 72202

**Defendant:** Dana A. Reece

Position: Attorney-at-law

Place of employment: Same

Address: 650 South Shackleford, Suite 400, Little Rock, Arkansas 72211

**Defendant:** LaQuita LaVonne Watson Butler

Position: Former State Witness

Place of employment: N/A

Address: C/O 200 North Cross (Commercial Mail), Little Rock Arkansas 72201

**Defendant:** Joseph Williford

Position: Jury Member (Former)

Place of employment: Pulaski Co. Courthouse,(Fourth Division

Address: C/O 401 West Markham Street, Suite 440, Little Rock Arkansas 72201

**Defendant:** Ernie Bailey

Position: Jury Member (Former)

Place of employment: N/A

Address: C/O 401 West Markham Street, Suite 440, Little Rock Arkansas 72201

**Defendant:** Tina Gaston

Position: Jury Member (Former)

Place of employment: N/A

Address: C/O 401 West Markham Street, Suite 440, Little Rock Arkansas 72201

**Defendant:** Bobby Buzbee

Position: Jury Member (Former)

Place of employment: N/A

Address: C/O 401 West Markham Street, Suite 440, Little Rock

Arkansas 72201

**Defendant:** Pam Savicki

Position: Jury Member (Former)

Place of employment: N/A

Address: C/O 401 West Markham Street, Suite 440, Little Rock
Arkansas 72201

**Defendant:** Susan Goodwin

Position: Jury Member (Former)

Place of employment: N/A

Address: C/O 401 West Markham Street, Suite 440, Little Rock
Arkansas 72201

**Defendant:** Vonda Odom

Position: Jury Member (Former)

Place of employment: N/A

Address: C/O 401 West Markham Street, Suite 440, Little Rock
Arkansas 72201

**Defendant:** Melvin Ledbetter

Position: Jury Member (Former)

Place of employment: N/A

Address: C/O 401 West Markham Street, Suite 440, Little Rock
Arkansas 72201

**Defendant:** Jean Dabbs

Position: Jury Member (Former)

Place of employment: N/A

Address: C/O 401 West Markham Street, Suite 440, Little Rock
Arkansas 72201

**Defendant:** Lambert Dyer

Position: Jury Member (Former)

Place of employment: N/A

Address: C/O 401 West Markham Street, Suite 440, Little Rock Arkansas 72201

**Defendant:** Susan Grady

Position: Jury Member (Former)

Place of employment: N/A

Address: C/O 401 West Markham Street, Suite 440, Little Rock Arkansas 72201

**Defendant:** Calvin Covington

Position: Jury Member (Former)

Place of employment: N/A

Address: C/O 401 West Markham Street, Suite 440, Little Rock Arkansas 72201

**Defendant:** Arthur Stoker

Position: Jury Member (Former)(Alternate)

Place of employment: N/A

Address: C/O 401 West Markham Street, Suite 440, Little Rock Arkansas 72201

**Defendant:** Gail Anderson

Position: Attorney-at-law

Place of employment: Same

Address: P. O. Box 23011, Little Rock, Arkansas 72221

**Defendant:** Carolyn Stanley

Position: Former Pulaski County Circuit Court Clerk

Place of employment: Pulaski County Circuit Courthouse

Address: 401 West Markham Street, Little Rock, Arkansas 72201

**Defendant:** Linda Hudson

Position: Patrol Officer

Place of employment: Little Rock Police Department

8

Address: 700 West Markham Street, Little Rock, Arkansas 72201

**Defendant:** Officer Holt

Position: Patrol Officer

Place of employment: Little Rock Police Department

Address: 700 West Markham Street, Little Rock, Arkansas 72201

**Defendant:** Laura Protchet

Position: Patrol Officer

Place of employment: Little Rock Police Department

Address: 700 West Markham Street, Little Rock, Arkansas 72201

**Defendant:** Robin Terry

Position: Patrol Officer

Place of employment: Little Rock Police Department

Address: 700 West Markham Street, Little Rock, Arkansas 72201

**Defendant:** Mickey Holloway

Position: Patrol Officer

Place of employment: Little Rock Police Department

Address: 700 West Markham Street, Little Rock, Arkansas 72201

**Defendant:** Officer Johnston

Position: Patrol Officer

Place of employment: Little Rock Police Department

Address: 700 West Markham Street, Little Rock, Arkansas 72201

I.   This court has jurisdiction over the parties and requests this cause of action be heard due to this court venue properly lies within 28 U.S.C. § 1391 (b)(2) in that the incidents giving rise

to this cause of action occurred in the State of Arkansas in the
City of Little Rock.

II.   Statement of Claims:

State here as briefly as possible the facts of your case.
Describe how each defendant is involved.  Include also the names
of other persons involved, dates and places.  Do not give any
legal argument or cite cases or statues.  If you intend to allege
a number of related claims, number and set forth each claim in a
separate paragraph. (Use as much space as you need.  Attach extra
sheets if necessary).

The Pulaski County, Little Rock Police Department, and the
Arkansas State Crime Lab defendants, are being sued as a
municipal corporation jointly and severally in their official
Capacities under the doctrine of Monell for (1) Policy of failure
to provide adequate funds to do state Crime Lab Testing(2) Policy
of Inadequate Supervision in Reviewing Police Conduct (3)
Unconstitutional Practices as municipal "custom and usage"
by condemnation in Conspiracy to Cover Up the Incident (4) False
Imprisonment, and the defendants Don Trimble, Dana Reece, and
Gail Anderson are (1) Malpractice in breach of duty of contract
(2) Conspiracy to cover up the Incident (3) False Imprisonment
stated herein for violation of the Plaintiff's rights held and
protected under the 1st, 4th, 5th, 8th and 14th Amendments of the
United States and Arkansas Constitution and the plaintiff also
seeks that these claims are heard under State Malpractice Statue
and hereby requests this case is heard under Doctrine of Pendant
Jurisdiction.

The civil cause of action, being brought under the Civil Rights

Act of 1871 as Amended and codified as 42 U.S.C. § 1983, and 42 U.S.C.§

1985(2)(3) and 18 U.S.C.§ 1964(c), thus-to redress the deprivation of

rights secured under the United States Constitution, particularly under

the Civil Rico Doctrine…plus invoking jurisdiction under 28 U.S.C.§

1331,1343,1367(a), using both state and federal statutory provisions,

.e.g. A.C.A. 5-2-502 and 503, to be provided declaratory and injunctive

relief under 28 U.S.C.§ 2201 and 2202… and have full intervention by

the United States Justice Department.

At all times relevant and mentioned too herein, the Plaintiff was

a free United States citizen of the State of Arkansas, and was a pre-

trial detainee and is now wrongfully and illegally, an inmate in the

Arkansas Department of Correction ("ADC").

10

The defendant John Langston, at all times relevant and mentioned herein, was (when illegally convicted and sentenced) and is a Circuit Judge of the Sixth Judicial District.

The defendants namely, John Ray White, Elizabeth Thomas, and Melanie Martin, at all times relevant and mentioned herein were and are Deputy Prosecuting Attorneys for the Pulaski County of Arkansas.

The defendant Mr. Berwin Monroe, at all times relevant was a Firearm and Toolmark Specialist, and Dr. Frank Peretti was an Autopsy Specialist for the State of Arkansas Crime Laboratory.

The defendants namely, Eric Knowles, A. Hamby, M. Owens, Melvin Vester, Davis Simpson, and Ray, at all time relevant and mentioned too herein, were and are detectives for the Little Rock Police Department.

The defendants namely, Don Trimble, Dana Reece, and Gail Anderson, Attorneys-at-Law business addresses, respectively, who are all practicing attorneys, "representing" plaintiff Charles Alexander/Ryahim's legal interest and thus because of what will be discussed herein, who breached their contractual duties as attorneys as representing their clients interest and acting in concert and conspiracy with all other defendants in this case.

The defendants namely, Mickey Holloway, Officer Johnston, Officer Holt, Linda Hudson, Robin Terry, and Laura Pritchett at all times relevant and mentioned too herein, were and are all patrol officers for the Little Rock Police Department.

The defendant namely, Marcus Johnson (a/k/a Marquis DeWayne Jones) at all time relevant and mentioned is believed to be the culprit that murdered Mark Brown on January 9, 1997 at 2817 South Cumberland, Little Rock, Arkansas 72206.

The defendants namely too herein LaQuita LaVonne Watson Butler at all times relevant and mentioned is believed to be a person who was actually in Chicago, Illinois on January 9, 1997.

The defendants namely, Joseph Williford, Ernie Bailey, Tina Gaston, Booby Buzbee, Pam Savicki, Susan Goodwin, Vonda Odom, Melvin Ledbetter, Jean Dabbs, Lambert Dyer, Susan Grady, Calvin Covington and Author Stoker (alternate) at all times relevant and mentioned too herein, were co-conspirators and jury members at the Pulaski County Courthouse (Fourth Division).

The defendant namely, Carolyn Stanley at all times relevant and mentioned too herein was the Former Head Circuit Clerk for the Pulaski County Circuit Courthouse.

At all times relevant and mentioned herein, each and every defendant is being sued both individually and in an official capacity-plus-indirectly and directly, in concert and conspiracy both individually and collectively, to form a full chain conspiracy in violating the customs, policies, practices and usage of both federal and state law and statutory and constitutional provisions guaranteed as equal protection to the plaintiff.

Immediate Civil and Criminal action is thus sought by plaintiff against all defendants, including, but not limited to United States Justice Department and Grand Jury intervention.

INTRODUCTION:  Blacks Law Dictionary (7th Ed. 1999) @ page 305, that a "Chain Conspiracy is:

> "A single conspiracy in which each person is
> responsible for a distinct act within the overall
> plan-all participants are interested within the
> overall plan/scheme and liable for all other
> participants', furtherance of that plan/scheme."
> Id. (Emphasis supplied.)

12

Similar to bookies at Las Vegas, but even a more serious one here, which has violated the plaintiff's constitutional rights, causing actual injury, mental strain, stress, and harm to plaintiff's family, as well as himself.

CHAIN CONSPIRACY: The cancer of legal jurisprudence and which spread faster than a forest fire.

CHAIN CONSPIRACY: Thus, this chain conspiracy has resulted in the plaintiff being a victim of extortion, illegal incarceration from a crime that even the victim's mother has found; revenge by the defendants, and much more, which made the plaintiff loose hard-earned money, family ties, freedom and his normal life and reputation. The following particularized facts best describe this case...

## COUNT ONE:

Orchestrated originally by the defendants, Detective Ray (who was first on the crime scene), with Detectives' Knowles, Vester, Simpson, Hamby, and Owens, on or about January 9, 1997, a shooting occurred at the Amelia B. Ives Housing Project, 2817 South Cumberland Street. An individual namely, Mark Brown, ended up being shot and killed. Because of this, a chain conspiracy began. What started such was an incident on December 23, 1996, when the plaintiff was accused of theft by receiving, A.C.A. 5-36-103, and other accusations after the plaintiff and another individual were caught in a vehicle reported stolen. An accusation of terroristic threatening A.C.A. 5-13-301, was placed upon the plaintiff because of a verbal confrontation with a Little Rock Police Officer, by the name of Carrie Mauldin...where in which

13

plaintiff (being misled, misinformed, evidence withheld from him), plead "guilty" in circuit court.

CHAIN CONSPIRACY: Defendant Ray, along with defendants Knowles, Vester, Simpson, Hamby, Owens, and along with fellow officers' colleague's defendant's Hudson, Holt, Terry, Pritchett, Johnson, and Holloway, acted collectively and individually and conspiratorially-ACCUSED the plaintiff of the shooting that occurred on January 9, 1997. Because of the fact that defendant Ray was asking bystanders at thus shooting if they knew "Charlie G", referring to the plaintiff, stating that he (Ray) wanted "Charlie G" for allegedly threatening his fellow Little Rock Police Officer Mauldin on or about December 23, 1996, and stated such to fellow defendant detectives Knowles, Vester, Simpson, Hamby, and Owens, as well as to defendant Hudson, Holt, Terry, Pritchett, Johnston, and Holloway, who all acted in concert and in a chain conspiracy to "Falsely Arrested, Falsely Detained, Aid in Falsely Convicting and Taking the Cherished Freedom," of the plaintiff, for the rest of his natural life.

CHAIN CONSPIRACY!

## COUNT TWO:

The police were acting in concert and conspiracy, FORCEFULLY, coaching various bystanders on making statements of false, secret identity and more. The defendants, Knowles, Hamby, Owens, Simpson, Ray, Marcus Johnson (a/k/a Marquis DeWayne Jones), Hudson, Holt, Terry, Pritchett, Johnston, Holloway, Butler, Trimble, Reece, Anderson, and Langston (the big co-conspirator) with a very personal interest in the case (trial, pre-trial and post-conviction proceedings) and know it, in

14

which they...all persuaded, misled, mis-instructed and forcedly
instructed by conspiratorial, hidden means...had defendants' Williford,
Bailey, Gaston, Buzbee, Savicki, (who was just planted there and was
not on the list of the forty (40) called jurors), Goodwin, Odom,
Ledbetter, Dabbs, Dyer, Grady, Covington, and Stoker, all "members" of
the jury conspire amongst each other, both individually and
collectively, use mere falseness, thus, taking the plaintiffs cherished
rights.

CHAIN CONSPIRACY: This isn't a Hollywood script of fiction, its real!
An innocent man has and continues to suffer deprivation of his
constitutional rights, because of the conspirators criminal endeavors
formed against him, in which he will now prove.

     CHAIN CONSPIRACY!

                          **COUNT THREE:**


     Having conspired individually and collectively by stating that
"we got a defendant, and we've got our man."-Judge John Langston (again
the head of this poisonous chained conspiratorial snake) and fellow
defendants' White, Thomas, Martin, Trimble, Reece, Anderson, Simpson,
Hudson, Hamby, Ray, Johnston, Holloway, Vester, Holt, Terry, Pritchett,
Butler, had already planned and intentionally schemed to deprive the
plaintiff of his cherished, protected constitutional rights, including
allowing the jury defendants Williford, Bailey, Gaston, Buzbee, Savicki
(the plant-in), Goodwin, Odom, Ledbetter, Dabbs, Dyer, Grady,
Covington, and Stoker.  The major chain conspiracy is not only where
the plaintiff's rights were violated, but by stating that plaintiff had
allegedly committed a crime due to a fight that occurred on or about

                              15

December 28, 1996, at a basketball game in the neighborhood, this chain
conspiracy consisted of fabricated evidence, false testimony,
inconsistent statements, conflicting legal representation (defendant's
Trimble, Reece, and Anderson), slander of plaintiffs good name, even
from the beginning where he was arrested, held, and accused of a crime
he did not commit arrested since January 10, 1997, and wasn't
officially charged until May 2, 1997, and without any discovery to
prepare a defense was taken to trial on July 22-23, 1997 and sentenced
to life)...the chain conspiracy and its actors made such a chain longer
by their misleading, misinforming and mis-instructing the jurors, by
stating that the "motive" for the crime was due to the fight and
stealing of the plaintiff's vehicle, on or about December 28, 1996.

CHAIN CONSPIRACY: No other evidentiary proof exists.  Even state
witnesses recanted their statements/testimony, and the victim's mother
wrote defendant Langston providing the plaintiff was innocent...that
the wrong man was incarcerated.  Yet and still defendants' White,
Reece, Anderson, Martin, and Langston acted in concert and conspiracy
to keep Charles Alexander/Ryahim behind bars, as well as defendant
Trimble, thus, violating plaintiffs rights.

CHAIN CONSPIRACY: Further, what shows the conspiracy in this
matter wherein, which plaintiff remembered in jail during the course of
this case, since being arrested and once the felony
information/indictment was such-that defendant Don Trimble was not
sufficiently prepared for trial (and even stated as much to the court),
is such that the plaintiff was seriously already "GUILTY" before the
"JURY" (all defendant jurors named above), the plaintiff suffered much.
Including the use of fabricated, false, perjured testimony from
defendants LaQuita Butler, James Fairchild, Mickey Holloway, Sharika

Hubbard, and Perry Holloway, where the plaintiff encountered fraudulent actions and fraudulent practices in making sure that he was convicted.

CHAIN CONSPIRACY: The chain conspiracy, consisted of coaching the "witnesses" for the state during the full legal process after the plaintiff was racially picked and retaliated upon by the defendants Knowles, Hamby, Owens, Vester, Simpson, Ray, Johnston, Holloway, Hudson, Holt, Terry, Pritchett (all of them being of the Caucasians race, except Vester), who was placed under pressure and afraid of losing his job of "going against the grain" of fellow officers by using racial profiling and mad at the plaintiff for the alleged "threat" made upon Officer Carrie Mauldin on or about December 23, 1996(another Caucasian officer), these above named defendants, by looking at the shooting/murder of January 9, 1997, being just another "Project Boy" matter. Such comment made by defendant Vester, the defendant's White and Thomas, acted in concert and conspiracy linking chain conspiracy with Knowles, Hamby, Owens, Vester, Simpson, Ray, Johnston, Holloway, Hudson, Holt, Terry, Pritchett, Butler, and Hubbard (who was threatened with jail if she didn't testify), and Trimble (even contacted many of the defendant police officers by phone) upon realizing that the case was merely circumstantial and would be based upon speculation or conjecture-purely weak. Defendants Anderson, Reece, Knowles, Hamby, Owens, Vester, Simpson, Ray, Johnston, Holloway, Hudson, Holt, Terry, Pritchett, White, Martin, and Thomas, acting in concert, and conspiracy, with the "Big Cohuna," defendant Langston, made sure that this innocent man, the plaintiff, would secretly be deprived of his constitutional rights during the entire judicial process, covering up for a crime they knew Marcus Johnson (a/k/a/ Marquis DeWayne Jones) committed! And during any Appellate processes (Langston, who plays golf and/or socializing with various judges in the Appellate courts,

which allowed Langston to privately talk with other judges and/or influence them), or post-conviction process (where defendants' Langston, Trimble, Reece and Anderson were still able to keep an innocent man, the plaintiff in jail/prison-without probable cause or proof as a matter of fact, not only did Mrs. Eleanor Brown, the victim's mother write defendant Langston that the wrong man was in prison-all the state witnesses-who were present during the incident of January 9, 1997, recanted their testimony!

Thus, no probable cause to arrest or detain- continuously-even Langston, even stating that the plaintiff was attempting to "retry" a trial where a man is factually and actually innocent, the plaintiff! Even when innocence was proven by even state witnesses that were at the original trial and who took the stand on October 15, 1999 and November 1, 1999 at the Rule 37 hearing and recanted their trial testimony as misidentifying the plaintiff as the shooter at the crime scene, where the case was left with absolutely no evidence linking the plaintiff to this shooting. Honorable Judge Langston still chooses to keep the plaintiff in jail by affirming the Rule 37 petition on January 4, 2000.

CHAIN CONSPIRACY:

## COUNT FOUR:

What makes this case a bigger chain conspiracy is this, the Plaintiff could have not received protection against the major encroachment of his already established rights...The fact that plaintiffs own paid attorneys' Don Trimble, "represented" the plaintiff, while Trimble "represented" the states' witness LaQuita Butler and that such representation of LaQuita Butler started on or

18

about January 12, 1995, a family member of the "victim" of the
shooting, David Jamar Dean (murder suspect) in two (2) automobile
accident cases and a criminal matter in Municipal Court and Darrell
Dean on or around July of 1997. The retainer's agreement being signed
on or around July 22, 1997, after it was agreed to represent the
plaintiff–and–a day before the plaintiff's trial! (It must be noted
here that not only is this an obvious conflict of interest–violating
the Model Rules of Professional Conduct governing attorneys, but a
continuous chain conspiracy by not informing plaintiff, or the
plaintiff's family or even the circuit court, but this was hidden as a
continuous chain conspiracy, when the defendant's Langston, White,
Thomas, Reece, and even Anderson–neither who sought any actions with
the Supreme Court of Arkansas, American Bar Association, nor the
Governors Office or possible reversal, clemency or release of the
plaintiff).

CHAIN CONSPIRACY: This violated not only the above mentioned,
such violated cherished rights, because defendants had conspiratorially
linked, chained, and made sure that the plaintiff would be deprived of
his rights–BUT ETHICS!

CHAIN CONSPIRACY: Pausing from naming the various counts in this
case which revolves the chain conspiracy (and also making it for
certain that it is also known that this is presenting violations of
plaintiffs civil rights that were intentionally disregarded and that
this is not a post-conviction attack), the plaintiff suffered harm of
violation of his clearly established rights with proof even being the
particularized facts, in which we incorporate by reference as a Civil
Rico Violation Chain Conspiracy Claim and hereby states:

1. The fact that all the officers and detectives that worked

19

With Carrie Mauldin, in whom the plaintiff was charged with threatening, were assigned to this homicide, which gave Detective Ray great motive to want to retaliate on the plaintiff, in that Detective Ray was also the head investigator between David Jamar Dean robbing the plaintiff of his car, which occurred a week before this homicide and was the first investigator to arrive to the crime scene. See Exhibit #1 and compare to Exhibit #37 and #42.

2. The fact that Vincent Williams stated he seen Detective Knowles and Crime Scene Specialist Mickey Holloway move the victim's body from the porch area to the sidewalk, and at trial the State had no coroner testify where the victim's body was originally found, or having the red coat. See State Exhibit #8.

3. The fact Vincent Williams stated, Mickey Holloway took fabricated pictures of the red coat, State Exhibit #8, laying it next to James Fairchild Monte Carlo vehicle to disguise his car as David Jamar Deans missing Chevy Burgundy Impala car. See Exhibit #30 and #31.

4. The fact that the CAD drawing showed James Fairchild Monte Carlo car did not have any red coat lying next to it. Yet at trial, Crime Scene Specialist Mickey Holloway, introduced crime scene photos of the red coat State Exhibit #8, laying next to James Fairchild Monte Carlo car. See Exhibit #4 and compare it to Exhibits #30 and #31.

5. The fact that the red coat State Exhibit #8 was not worn by the victim, who was shot in the mid back area. Therefore, Mickey Holloway took a dark black photo of the red coat State Exhibit #8, to hide the fact it did not have any bullet entry

20

to the back of it, which is substantiated by the fact the red coat, State Exhibit #8, was balled up in a wad at trial to keep jurors from being able to detect it was phony.  See Exhibit #33.

6.  The fact that D.P.A. Mr. Ray White, used threats of jail to Threaten a 16 year old girl "Sharika Hubbard", to testify to the States Motive after she told him the motive testimony was not facts.  He forced her to commit perjury to secure the States Motive.  See Exhibit #10 and compare it to Exhibits #26, #28, and #29.

7.  The fact that the Plaintiff Trial Attorney, Don Trimble admitted by Sworn Affidavit, that he represented LaQuita Butler, the State witness, yet kept it hidden.  He represented David Jamar Dean and Darrell Dean, two suspects in the murder, and was in fact a Prosecutor in Lee County, Arkansas in Marianna at the time of the Plaintiff Trial, and didn't have the Plaintiff sign any written transaction of the conflict of interest waiver form, acknowledging the Plaintiff had knowledge of this, as well as agreeing to still representing him at trial, regardless to his connection to the Deans and the State as a Prosecutor.

8.  The fact that defendant Pam Sabecy A.K.A. Pamela Savicki was not a registered juror called nor sworn to hear this case, which is substantiated by her not being on the original jury list dated July 22, 1997.  Yet she was illegally planted by defendant John Langston without an objection and in concert, conspiracy and acquiescence of White, Trimble, Thomas, and Langston.  See Exhibit #21.

9.  The fact that Juror Joseph Williford was a State Employee who

21

Job description was unknown.  Juror Tina Gaston had priory
sat on trials for D.P.A. Mr. Ray White and had obtained
convictions on them, and also was also allowed to be the
Foreman.  Juror Pam Savicki was illegally planted and not
called nor registered.  Juror Suzanne Goodwin was a friend of
D.P.A. Elizabeth Thomas and even after being threatened by
gang members was allowed to remain in the Jury Box, after
stating she could not be a fair and impartial juror.  Juror
Vonda Odom employment was blank.  Juror Jean Dabbs husband is
an attorney, yet it was not noted whether he worked for an
Attorney General, Prosecuting Attorney or Defense Attorney.
Juror Calvin Covington wife is a legal secretary, yet it was
not noted if it was for an Attorney that represented the
State or a State Official, or Senator.

10. The fact that the Guilty Verdict Form, and Sentencing Form
    are both BLANK and were never stamped received, or filed,
    or certified, showing the Jury Decision as a Factual
    Finding.  This substantiates the Plaintiff is being held
    unlawfully and the Judgment and Commitment Order is invalid
    on its face entitling the Plaintiff to immediate expungment
    of the entire conviction ordering his immediate release.  See
    Exhibit #24.

11. The fact that Little Rock Police agency investigation note
    Showed LaQuita Butler had just got back from Illinois on 1-9-
    97, the day of the shooting, and not one eye witness at the
    crime scene ever alleged in their statement to the police the
    night of the crime she was at the party and in the car with
    her "baby" with James Fairchild when the shooting took place.
    Yet she was a Surprise Witness at trial and allowed to

testify against the Plaintiff, not being known to the defense
or the Witness List.  See Exhibit #34 and compare it to
Exhibit #25.

12. The fact that D.P.A. Mr. Ray White introduced day time photos
    Of a nighttime crime scene when Perry Holloway testified.

13. The fact that only bailiff's have key to the Witness Room at
    Trial, yet after LaQuita Butler testified and was ordered to
    leave the trial and go back to work at her job, she instead
    was caught in the witness room coercing Sharika Hubbard
    before she testified.

14. The fact that there was never any photo line up produced at
    Trial to show any of the witnesses picked the Plaintiff out
    of a list of suspects as being the shooter they seen the
    night of the crime.

15. The fact that the Plaintiff Appeal Attorneys Ms. Dana Reece
    and Ms. Gail Anderson kept it hidden throughout the Plaintiff
    prior criminal appeals the evidence argued in Paragraphs 1
    through 14 stated herein, as well as not filing any Petition
    to get the Plaintiff released from prison when they know the
    Judgment and Commitment Order is Invalid on it's face.  This
    proves they were Ineffective Appeal Attorneys and were part
    of the poisonous tree chain conspiracy in order to secure the
    conviction  through  post-conviction  remedies  and  direct
    appeals.

16. The fact that the Plaintiff was arrested January 10, 1997,
    And wasn't officially charged until May 2, 1997, and without
    any tine to prepare a defense was taken to trial on July 22
    through July 23, 1997, and sentenced to Life.   See Exhibit
    #20.

17. The fact that Ark. Sup. Ct. had jurisdiction to report the
    Civil rico violation pursuant to Article 15, Sections One and
    Three of the Arkansas Constitution after having reviewed the
    CR97-1450 Trial Transcript and Rule 37 Transcript seeing what
    actually went on, but instead washed all the Plaintiff Post
    Conviction Remedies and Direct appeals away keeping a code of
    silence to protect the State and not once out of the many
    appeals the PANEL for Ark. Sup. Ct. ever refer the case over
    to the Arkansas State Capital, Arkansas Legislative Judicial
    Investigative Subcommittee or the Arkansas Supreme Court
    Judicial Discipline and Disability Commission for review in
    order to take corrective action for the high crimes,
    misdemeanors, and gross misconduct in office to remove them
    from office or remove the judgment after seeing it was
    illegal and void on it's entire face.

18. The fact that the victims mother Mrs. Eleanor Brown wrote
    Judge Langston and told him she had evidence to prove the
    Plaintiff was innocent and didn't kill her son Mark Brown,
    and on October 15, 1999, November 1, 1999, and November 9,
    1999, at the Rule 37 Hearing, all the State Witnesses, Perry
    Holloway, Sharika Hubbard, and LaQuita Butler, recanted their
    trial testimony coming forth with the truth that the
    Plaintiff was not who they seen as the shooter at the crime
    scene the night of the crime, proving the Plaintiff to be
    Actually Innocent and wrongfully convicted.    Yet  Judge
    Langston still choose to affirm the Plaintiff conviction on
    January 4, 2000.   On June 22, 2006, when evidence finally
    surfaced on whom it is believed to be the culprit, Judge
    Langston refused to order the State Crime Laboratory Testing

24

to see if Marcus Johnson was the killer.   See <u>Exhibits #1,
#9, #10, #11, #12, #13, #14, #15, #16, #17, #18, and #19</u> and
compare them to <u>Exhibit #41, #42, and #43,</u> which provided
sufficient allegations and sufficient evidence of chain
conspiracy from material facts of exhibits stated herein.

Furthermore, during the course of the case, which the jurors'
Williford, Bailey, Gaston, Buzbee, Savicki, Goodwin, Odom, Ledbetter,
Dabbs, Dyer, Grady, Covington, and Stoker, were acting in concert and
conspiracy, with Knowles, Hamby, Johnston, Simpson, Vester, Hudson
Terry, Pritchett, Owens, Ray, Holloway, White, Thomas, Martin, Trimble,
Reece, and Anderson...all again, orchestrated, approved and by
<u>defendant Langston</u>, these defendants, in which prejudiced the Plaintiff
future post conviction appeals in that this corrupt organization has
influenced the higher courts to affirm all the Plaintiff post
conviction remedies in order to protect the "State" from being exposed
to the Public and bringing National World Attention to the world
showing then that <u>the Emmett Till Lynching still lives on</u>......

This isn't a John Grisham novel, but <u>it shows how juries in
criminal or civil trials run away, due to such misinformation's and/or
misinstruction!</u>

<u>A SERIOUS CHAIN CONSPIRACY</u>:  A complete mockery of our judicial
system and violation of clearly established constitutional law and
rights!

<u>CHAIN CONSPIRACY</u>:  This is a case where conspiracy has shown by
a preponderance of evidence and a seriously corrupt organization, which
are <u>prohibited</u> under state and federal constitutional law for which
<u>RICO</u> is immanent to be <u>proven</u> by the plaintiff being given his

mandatory due process opportunity of being heard in person and in open court.

CHAIN CONSPIRACY!

## COUNT FIVE

Even the plaintiff's beloved mother, Mrs. Alycia Dianne Anderson and the decedent's beloved mother Mrs. Eleanor Brown have even gone public in Arkansas biggest newspaper, the Arkansas Democrat/Gazette, showing how the plaintiff, also known as Charlie G. was intentionally deprived of his First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth United States Constitutional Amendment rights and Civil RICO rights under 18 U.S.C. § 1964(c)-plus-due to the fact that it is shown that due to chain conspiracy of the defendants-even the fact that testimony was proven that the plaintiff was not even present during the crime that took place at 2817 South Cumberland on January 9, 1997, such proof was disregarded.

CHAIN CONSPIRACY: The two (2) females from the Little Rock Job Corps (because of such an agency being both federally and state funded, and which would have given the Job Corps, a "black-eye" in its reputation)-nor of the issue where the plaintiff reported to the police at Kroger's, when the plaintiff was jumped on and his car stolen...where defendant's White and Thomas, all above defendant police, detectives, Langston, Trimble, Reece, and Anderson, NEVER called these potential witnesses-withheld critical material and factual evidence favorable to the plaintiff-and as such has an innocent man out away!

26

CHAIN CONSPIRACY:  These constitutional deprivations are worse than "Rachel crying for her children in the wilderness!"

All of the plaintiff's "attorneys" who were paid money...hard earned money from the plaintiff, his beloved mother Mrs. Alycia Anderson, and many other beloved family members and friends.  Defendant "attorneys" Trimble, Reece, and Anderson committed legal malpractice, conspiracy, breach of binding contract and chain conspiracy, with all of the other defendants in depriving the plaintiff of his civil rights, withholding evidence-not even initiating legal competence or diligence in finding the real truth-which has violated also the Civil RICO law and the plaintiff's First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth United States Constitutional Amendment rights and state law under 28 U.S.C. § 1367 (a), and Ethics as a Legal Advocate.

CHAIN CONSPIRACY!

## COUNT SIX

All defendants above that are named as having acted in concert and conspiracy-linking the chain-during the course from when the plaintiff was arrested on January 10, 1997, too beyond the trial (where Dana Reece, regarding post-conviction Rule 37 on October 15, 1999, November 1, 1999, November 9, 1999; Gail Anderson after the Rule 37 and appeal of such)-and Don Trimble, plaintiffs' trial counsel, by not revealing to the plaintiff that Don Trimble had represented the states' witnesses, including family members of the deceased person; Sharika Hubbard (another state witness who recanted her testimony and wrote a letter dates October 25, 2000), LaQuita Watson Butler, Davis Jamar Dean, while representing the plaintiff.  Furthermore, required to be an

"officer of the court" did not reveal to the plaintiff (his own client-violating Ethics, The Model Rules of Professional Conduct governing any and all attorneys-at-law-including defendants civil rights through the chain conspiracy), Trimble, who also did not abide by ethical standards with his client as recognized by the American Bar Association, required standards, acted with other defendant attorneys to deprive the plaintiff of his First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendment rights, even though committing intentional violations of the Model Rules of Professional Conduct, all defendant chain co-conspirators herein. Defense counsel Trimble admitted to these wrongs, showing he never presented this to the court and the prosecution, jurors, detectives, judge and officers as defendants of this, neither defendant has come forward since plaintiff illegal status knowing now the fact that an innocent man is in prison! **(See Attachments)**. It should also be noted that Don Trimble was also a prosecuting attorney while representing the plaintiff and never revealed this to his client or his family!

CHAIN CONSPIRACY!

## COUNT SEVEN

The defendants, at all times relevant and mentioned herein, acted in concert and chain conspiracy with Mr. Berwin Monroe, and Dr. Frank Peretti, to give False Testimony in regards to the blood trail, 9mm hulls, and 9mm Bullet taken from Mark Brown chest cavity falsely alleging this evidence was not tested before trial.

Where these defendants who worked for the Arkansas State Crime Lab received a request from Detective Eric Knowles on January 10, 1997,

28

to match bullet with weapon and match blood trail with victims blood.
After the Little Rock Police Agency discovery of the fact that Marcus
Johnson was shot on January 9, 1997, waiting, having refused to turn
his self in at Baptist Hospital until January 10, 1997 at 3:00a.m.,
where the defendants having tested such evidence that they knew the
results proved the Plaintiff Factually Innocent, where Detective Eric
Knowles, and Detective Melvin Vester coerced Mr. Berwin Monroe to not
reveal the test results at trial showing Marcus Johnson being the
culprit of this crime, and coerced Frank Peretti the doctor who
performed the autopsy to not reveal at trial at the time Mark Brown was
shot, he did not have the red coat, State Exhibit #8, on his body, in
which the same coat had red chemicals smeared on the back of it to
disguise it had no bullet entry, in order for Crime Scene Specialist
Mickey Holloway to be able to use the red coat, State Exhibit #8, at
trial without it being discovered it was Phony in order to secure the
states motive under Mistaken Identity, using Fraud and Fraudulent
Practices to ensure they obtained a conviction.

Where in this instant case chain conspiracy can be inferred due
to all defendants herein acted in concert and conspiracies within a
chain to deprive the Plaintiff of his rights and convicted an Actual
and Factual Innocent Man in a place with a history of dehumananization.

CHAIN CONSPIRACY!


## COUNT EIGHT


Had Plaintiff family and Plaintiff known about these many chain
conspiracies occurring throughout the entire CR97-1450 Trial
Proceedings, Post Conviction Remedies, and Direct Appeals from the

entire Administrative Proceedings in Arkansas Supreme Court involving
Trial Attorney, Appeal Attorneys, Prosecuting Attorney, Police , Juror,
and Judicial Misconduct violating customs, policies, practices, and
usage of both federal and state law acting in concert and conspiracies
within a chain to secure the conviction-in which if plaintiff found out
about later, he could have stopped these chain conspiracies  and there
matters would have been a mere fantasy.

BUT THEY ARE NOT FICTIOUS

CHAIN CONSPIRACY:  Where as, the Plaintiff hereby seeks the
defendants are found to:

1. By law, provide the Plaintiff, Declaratory and Injunction
   Relief in the CR97-1450 Federal Habeas Corpus Proceedings on
   all 28 U.S.C. § 2254 Procedurally Defaulted Claims based on
   cause and prejudice of chain conspiracy civil RICO violation
   and Actual Innocence under the: Fundamental Miscarriage of
   Justice Exception to the Procedural Default Rule.

2. That the Pulaski County, Little Rock Police Department, and
   Arkansas State Crime Lab, these defendants herein jointly and
   severely pay the Plaintiff ($110,000,000.00
   Million Dollars) in Compensatory Damages.

3. That the Attorneys Don Trimble, Dana Reece, and Gail Anderson
   These defendants herein jointly and severely pay the
   plaintiff ($11,000,000.00 Million Dollars) in Compensatory
   Damages, and pay ($850,000.00 Thousand Dollars) in Punitive
   Damages.

4. That the court enter an order granting an Evidentiary
   Hearing, order the State to produce all documents the

30

Plaintiff is requesting they produce through Discovery and produce all Scientific Evidence in the CR97-1450 Case, consisting of the blood trail, 9mm Hulls, redcoat State Exhibit #8, and bullet retrieved from Mark Brown Chest Cavity, and produce all Scientific Evidence in the 97-349, 97-2197, 97-12008, and 98-293 Cases consisting of the 9mm Pistol, 9mm Hulls and 9mm Bullets, and give the Plaintiff the right to be heard on his request for State Crime Lab Testing.

5. That an Grand Jury Investigation Be Ordered for possible Criminal charges against all individually named persons within this complaint.

6. Immediate United States Justice Department Intervention be Ordered by this court.

7. All other equitable relief deemed proper and just by this Honorable Court; and

8. To reserve the Plaintiff, the right, "To Plead/Prosecute Further."

Executed under 18 U.S.C. § 1621 and 28 U.S.C. § 1746, on this __21__ day of ___October___, 2007 as true, accurate, and correct.




Respectively Submitted,


                                    ADC#11057
[x] _Charles E. Alexander Jr./Ryahim_
        Charles Alexander/Ryahim
        Pro Se Litigant ADC# 111057
        Varner Supermax Unit
        P.O. Box 400
        Grady, AR 71644

APPENDIX

CIVIL RICO LAWSUIT EXHIBITS

EXHIBIT NO:          EXHIBIT

    1.          AFFIDAVIT BY VINCENT WILLIAMS

    2.          GUNSHOT RESIDUE TEST ON MARK BROWN

    3.          DETECTIVE ALLEN HAMBY INVESTIGATIVE REPORT

    4.          DIAGRAM OF CRIME SCENE STATE EXHIBIT (1)ONE

    5.          REPORT FROM OFFICER LINDA HUDSON

    6.          CASE REPORT

    7.          PHOTOGRAPH OF APPEALANT IMMEDIATELY AFTER
            SHOOTING INCIDENT

    8.          COACH ANTHONY CHAMBERS TESTIMONY FROM RULE
            37 HEARING

    9.          LAQUITA BUTLER TESTIMONY FROM RULE 37
            HEARING

    10.         AFFIDAVIT BY SHARIKA HUBBARD

    11.         PERRY HOLLOWAY TESTIMONY FROM RULE 37
            HEARING

12.        LETTER FROM DECEDANT'S MOTHER MRS. ELENORE
           BROWN

13.        PHOTO IDENTIFICATION OF MARCUS JOHNSON

14.        MARCUS JOHNSON RAP SHEETS


15.        EVIDENCE TAG FOR THREE (3) RED COATS FOUND
           AT THE CRIME SCENE

16.        MARCUS JOHNSON CRIMINAL CASE 97-349

17.        MARCUS JOHNSON CRIMINAL CASE 97-2197

18.        MARCUS JOHNSON CRIMINAL CASE 97-293

19.        MARCUS JOHNSON ARKANSAS ARREST DISPOSITION
           REPORT

20.        CR97-1450 COURT EXECUTION DOCKET

21.        TRIAL TRANSCRIPT PAGE 68

22.        RULE 37 HEARING TRANSCRIPT PAGE 172

23.        JURY LIST AND JURY SELECTION CHARTS

24.        GUILTY VERDICT FOR AND SENTENCING VERDICT
           FORM

25.        TRIAL TRANSCRIPT PAGE 52

26.        TRIAL TRANSCRIPT PAGE 58

27.        PROSECUTORS REPORT PURSUANT TO ARK. CODE
           ANN. SECTION 12-27-113

28.        LITTLE ROCK POLICE DEPARTMENT ROBBERY
           REPORT

29.        RED ROOF HOTEL RECORDS

30.        TRIAL TRANSCRIPT PAGE 148

31.        STATE EXHIBIT (2)TWO PHOTGRAPH OF JAMES
           FAIRCHILD'S CHEVROLET MONTE CARLO CAR

32.        STATE EXHIBIT (8) EIGHT RED BOOMER COAT AND
           TRIAL TRANSCRIPT PAGES 61-63

33.               TRIAL TRANSCRIPT PAGES 203-206

34.               POLICE INVESTIGATIVE REPORT "LAQUITA JUST GOT BACK FROM ILLINOIS"

35.               LAQUITA BUTLER TESTIMONY FROM RULE 37 HEARING

36.               TRIAL TRANSCRIPT PAGES 127-128

37.               TRIAL TRANSCRIPT PAGES 222-227

38.               MOTION FOR DISCOVERY

39.               TRIAL TRANSCRIPT PAGE 207

40.               TRIAL TRANSCRIPT PAGE 219

41.               NEWS PAPER CLIPPING OF EMMETT TILL LYNCHING

42.               CR97-802 FELONY INFORMATION

43.               NEWS PAPER CLIPPING ON "MOMS"

A F F I D A V I T

EXHIBIT
1

STATE OF ARKANSAS            )
                             )
COUNTY OF __Lincoln__        )

I, __Vincent Williams__ _____ , after first being duly

sworn, do hereby swear, depose and state that: I AM a Gang member and AFFiliAte
IF Blood stone villian Gangster 21st posse, and that on Jan 9, 97 9:00p
= mark Brown, David Jamar Dean, perry Holloway, shaRikA Hubbarc
Darrell Dean, James Fairchild, and shelly Gulley were all attending
a party at 2817 S. cumberland.. which is David Jamar Dean
irlfriend shelly Gulley apartment: when mark Brown decided to
save the apartment to get a CD from David Jamar Dean= Burgundy
mpala car- which was parked next to James fairchild monte carl
ar.. when James fairchild and David Jamar Dean= Left the park
s go outside to see what was taking mark Brown so Long: when I
vas looking out the apartment window from the front of the apartmen
nd seen a block male named marcus Johnson who had a blue shirt
n with a black Hood over his head come from around the side of
he apartment shooting a 9mm pistol at mark Brown and David Jamar
Dean: when mark pulled out his gun and began shooting back of
marcus Johnson. when markus was struck in the thigh by one of the
bullets and struck in the mid Lower back area and David was
struck in the shoulder:

I further swear that the description of the incident contained herein, is a true, accurate and
impartial description to the best of my knowledge, information and belief.

NAME: __Vincent Williams__

DATE: __June 30, 2005__

__Vincent Williams__
SIGNATURE

Subscribed and sworn to before me this __30__ day of

__June__ , 20 05

NOTARY PUBLIC

My Commission Expires: __Dec 10, 2014__

ADC-CDC—1402

-1-

STATE OF ARKANSAS )
)
COUNTY OF _Lincoln_ )

I, _Vincent Williams_ , after first being duly sworn, do hereby swear, depose and state that: when James Fairchild got out his car shooting back at marcus Johnson. where marcus Johnson took off running in an awkardly manner appearing to be wounded, fleeing , the back of the apartment and Jumping in a car speeding away from re scene: I then came outside to check on mark Brown when I seen A crowd standing around his body near the front porch step where he fall. then seen James Fairchild moving people out the way to see if he was lingth: In which James checked his pulse realizing he was dead: Darrell, David, and Perry then all Layed their Red coats over mark body ue to he was a member of Blood stone Villian Gangster 21st Posse: then the police arrived nearly 30 minute later: A detective named Det. ay was the first to arrive to the scene, I immediately informed him : seem marcus Johnson shoot and kill mark Brown fleeing the scene umping in cors that was parked behind the apartments: Det. Ray ther isked me did I know a charlie G. A.KA Charles Alexander, I said es. he then told me charles alexander had threatened one of his FFicers named Carrie mauldin, and that charlie G was a menace to society, and that he was gone teach Alexander not to mess with the Little ock P.O.. at this time I noticed Det. Ray, Det. Knowles, and a man

I further swear that the description of the incident contained herein, is a true, accurate and impartial description to the best of my knowledge, information and belief.

NAME: _Vincent Williams_

DATE: _June 30, 2005_

_Vincent Williams_
SIGNATURE

Subscribed and sworn to before me this ___30___ day of

___June___ , 20_05_.

_L. H. Sule_
NOTARY PUBLIC

My Commission Expires: _Dec 10, 2014_

ADC-CDC-1402

**A F F I D A V I T**

STATE OF ARKANSAS )

COUNTY OF ~~Pope~~ Lincoln )

I, Vincent Williams , after first being duly
sworn, do hereby swear, depose and state that: named mickey Holloway were Tampering
ith crime scene evidence: in which Det. knowles ordered his officer's t
ake everone standing around in the crowd go home. where they all
Eared out: after all the neighbors had Left, I seen Det. Knowles and
ickey Holloway drag marks body to the side walk where David Jama
an ~~Impola~~ had been parked before they left to go to the hospital: I
n seen mickey Holloway Remove one of the Red coats that was near
=front porch that had been Laid over marks body: where he Layed thi
at next to James Fairchild monte carlo car, to disguise James car
s David Burgundy impala car which was missing, due to Darrell
rwing David to U.Am.s Hospital to get the 9mm Bullet out of his
ulder in the impala car. mickey Holloway then Removed marks Gun an
umes Gun from the front porch which was Layed near the other Red
ats where marks body had been:
                                      by Removing the weapons and not taking
dures altering the crime scene: then mickey Holloway taking a pidu
= one the Red coats Layed by James monte carlo car: I knew they
jas gone frame Alexander for the murder. when I heard the
detective named Ray tell Det. Knowles we'll Just say

I further swear that the description of the incident contained herein, is a true, accurate and
impartial description to the best of my knowledge, information and belief.

NAME: Vincent Williams

DATE: June 30, 2005

Vincent Williams
SIGNATURE

Subscribed and sworn to before me this 30 day of
JUNe , 20 05

LT H. Sule
NOTARY PUBLIC

My Commission Expires: Dec. 10, 2014

-3-

ADC-CDC-1402

STATE OF ARKANSAS          )
                           )
COUNTY OF _Lincoln_        )

I, _Vincent Williams_, after first being duly sworn, do hereby swear, depose and state that: Alexander was the shooter since David _bed_ him of his car. and we can call it a night by using mistaken _entity_ as our motive, perry, Sharika and James were then loaded one of the policemen patrol cars and were taken to Little Rock P.D _dquarter_ to make a statement. when they come back that night, they _me_ the Detectives named Knowles and Vester made them make _itement_ against charlie G" alleging he was the one fleeing the scene _n_ a gun when he was not: sharika, James and perry told me Det. _ules_ threatened them if they said anything about this, they would never _their_ families again: so I was afraid back then to tell anyone what _I_ know, but now I regret it and understand I made a Grave mistak _d_ I am now comming forth with the truth: that mark Brown death _is_ Gang/slash Crip and blood related. that the L.R.P.D Framed _arles_ alexander for a murder that marcus Johnson A.K.A money mark _rmitted_: who is a Crip member from 19th street Crip: LAQuita was _ing_ in chicago illinois on Jan 9, 97 Check the illinois Housing Authority _cords_ it will prove she never witnessed the shooting: also marcus _hnson_ shot Derrick williams 12 times back in 1997, it was Aired all over _e_ news, this may be the same 9mm weapon he Kill mark Brown with

I further swear that the description of the incident contained herein, is a true, accurate description of the events, and it is a true, impartial description to the best of my knowledge, information and belief.

: the Bullet that was Retrieved from mark Brown:

NAME: _Vincent Williams_

DATE: _June 30, 2005_

_Vincent Williams_
SIGNATURE

Subscribed and sworn to before me this _30_ day of
_JUNE_, 20 _05_

_H. Sidwe_
NOTARY PUBLIC

My Commission Expires: _Dec 10, 2014_        -5-

ADC-CDC-J402

800-4

STATE OF ARKANSAS      )
                           ) §
COUNTY OF _Lincoln_     )

## AFFIDAVIT

I, ___Vincent Williams___, after first being duly sworn, do hereby swear, depose

and state that: chest cavity is examined with the 9mm pistol they confiscats

n marcus Johnson in the Derrick williams shooting by a firearm and tool

ark specialist it may match that weapon (which could prove marus Johnson

who kill mark Brown Jan 9, 1997 I am willing to Testify regarding all state

Erein:

         ... End of Statement ....

     I made this statement under no duress and without undue

oercion Exerted against me by anyone involved in this case:

I further swear that the statements, matters and things contained herein are true and accurate to

the best of my knowledge, information and belief.

___June 30, 2005___
DATE

___Vincent Williams___
AFFIANT

___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___
SOCIAL SECURITY #

SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public, on this _30_ day of
___June___, 20_05_.

___LT H. Suhe___
NOTARY PUBLIC

My Commission Expires: _Dec 10, 2014_

-5-

# STATE CRIME LABORATORY
P.O. BOX 5274
Number 3 Natural Resources Drive
Little Rock, Arkansas 72215



**EXHIBIT**
**2**

atory Services
:7-5747

*REPORT OF LABORATORY ANALYSIS*

Medical Examiner
227-5936

---

jating Officer/Agency/Address

| | |
|---|---|
| | **Laboratory Case Number:** 97-00401   Page 1 of 1 |
| | **Date Received in Lab:** 01/10/97 |
| Eric Knowles | **How Evidence Received:** M E / Paul Hartman |
| le Rock Police Department | |
| W. Markham | **Agency Case Number:** |
| le Rock, AR 72201 | |

ct(s):

Victim(s):
Markeuius Brown

---

xt Report:      01/29/97

ereby attest and confirm as specified by A.C.A. 12-12-313, that the information listed below is a true and accurate report of the results of '
sis performed by me of evidence received in a sealed condition at the Arkansas State Crime Laboratory.

## 4S SUBMITTED FOR EXAMINATION:

:     One (1) gunshot residue Collection Kit, sampled from Markevius Brown, labelled
      ME 34-97, containing:

          Swabs possessing residues from the right hand, palm and back
          Swabs possessing residues from the left hand, palm and back
          Control swabs

## ULTS OF ANALYSIS:

  hand swabs from Markevius Brown were examined for elements which are the primary
ponents of gunshot residue.  Analysis of the gunshot residue kit resulted in the detection
these elements at levels consistent with gunshot residue on the RIGHT hand samples.  The
sence of this residue could be the result of discharging a firearm or being in contact
:h a gunshot residue environment.  The results of this test are considered POSITIVE.

*isa Sakevicius*

;a Sakevicius, Criminalist

/j1

:e of Arkansas
inty of *Pulaski*
scribed and sworn to before me, the undersigned Notary Public on this ___4___ day of ___February___, 1997.

*Peggy Renee Faibelt*
Commission Expires *July 3, 2006*

h

EXHIBIT
3

INCIDENT # 97-4304

## SECTION VIII

*Notes and Observations*

At the direction of Det. Allen Hamby I went to 2817 S. Cumberland where I met with Det. Lt. J.R. Hall and Officer Linda Hudson (2×80) who briefed me on the incident. Apparently the shooting took place in the yard in front of apartments 2815 and 2817. We found nine 9mm Luger R-P spent bulls. in front of #2815. The blood pool and clothing items were close to the vehicle and street in front of 2817. The patrol officers (Hudson and Holt) had resined the scene and the victim had been removed prior to my arrival. Apparently most of the shots had been fired in a southwesterly direction from the location of the bulls (E5 thru E13). The house SW of there received at least three hits to its east (2) and north (1) sides. I took photographs of the scene and had Officer Holt assist me in marking, measuring and collecting the evidence. I also took photographs of the house at 2817 _____ particularly shots of the bullet strikes at the bullets. After collecting the evidence (clothing items, spent bulls, C.D. & hair & lighter) I departed the scene and went to UAMS to follow up on the victim. (All the spent bulls were of the same caliber and brand.) Upon arrival at UAMS I was directed to the UAMS morgue where I took photographs of the victim with the assistance of Deputy Coroner _____ _____.

Check List: Section I _____
Section II _____
Section III _____
Section IV _____
Section V _____
Section VI _____
Section VII _____
Section VIII _____

Signature _____

Date/Time _____

EXHIBIT
4

E-1
E-3
E-4
E-2
E-1
E-10
E-12
E-9
E-6
E-8
E-11
E-7
E-5
E-13
R.P.

City of Little Rock
Police Department
Crime Scene Search Unit

| | | |
|---|---|---|
| 1-9-97 | Homicide | 97-4304 |
| | Mark A. Brown | |
| | 2817 S. Cumberland St. | |

E-1  —  3 Cools
E-2  —  Plastic Butane Lighter
E-3  —  Small Blood Pool
E-4  —  Misc Clothing Items
E-5 thru E-13 — RP 9MM Hulls

T # 97-4304

**LITTLE ROCK POLICE**
**INFORMATION REPORT**   LRN _____

Homicide   Inc. Date Thurs 1-9-97   Inc. Time 2110   Type Call Shooting Just Occurred

7-97   Call Time 2117   Unit Assgn. 2X80   Prem Res   Geo. Code ___   District Occu 80

# OF INCIDENT   2817 S. Cumberland

**EXHIBIT 5**

siness Name _____   Phone _____

Class: (Check One)   Person Reporting ☐ Victim ☒ Suspect ☐ Witness ☐ Owner ☐ Contact ☐ Missing ☐ Runaway ☐ ATL ☐ Wanted ☐

last Brown   first Mark   middle A.

B Sex M DOB 11-12-77   HGT ___ ft ___ ins   Wgt ___   Hair Color ___   Eye Color ___

209 E. 22nd   Type Res   City LR   State ar

372-2978   Type Res   Driver's Lic. # ___   State ___   Social Sec. # ___

of Employment   NONE   Phone ___   Scars; Marks; Aliases

(Location of Weapon, Etc.) ___

hing Desc: Hat ___   Coat ___   Shirt/Blt ___   Pants/Dress ___   Shoes ___

's Class: (Check One)   Person Reporting ☐ Victim ☐ Suspect ☒ Witness ☐ Owner ☐ Contact ☐ Missing ☐ Runaway ☐ ATL ☐ Wanted ☐

e: last unknown   first unknown   middle ___

B Sex M DOB Approx 25 YOA   HGT 6 ft 2 ins   Wgt 200 lbs   Hair Color Blk (low cut)   Eye Color unkn

dress unknown   Type ___   City unkn.   State ___

one unkn   Type ___   Driver's Lic. # ___   State ___   Social Sec. # ___   Scars; Marks; Aliases

ce of Employment   unkn   Phone ___

le. (Location of Weapon, Etc.) Chrome or silver large cal. semi-auto.

othing Desc: Hat ___   (Coat) Blk leather   (Shirt/Blt) Blue sweat shirt w/ Hood   Pants/Dress ___   Shoes ___

ubj's Class: (Check One)   Person Reporting ☐ Victim ☐ Suspect ☐ Witness ☒ Owner ☐ Contact ☐ Missing ☐ Runaway ☐ ATL ☐ Wanted ☐

ame: last Fairchild   first James   middle ___

lact B Sex M DOB 9-19-74   HGT ___ ft ___ in ___   Wgt ___   Hair Color ___   Eye Color ___

Address 2805 West 29th   Type Res   City LR   State ar

hone 372-2978   Type Message   Driver's Lic. # ___   State ___   Social Sec. # ___   Scars; Marks; Aliases

Place of Employment   NONE   Phone ___

Info. (Location of Weapon, Etc.) ___

Clothing Desc: Hat ___   Coat ___   (Shirt/Blt) ___   Pants/Dress ___   Shoes ___

Ven. Class: (Check One)  Wntd ☐  Suspect ☐  Subj of Reprt ☐  Stolen ☐  Abandoned ☐  Stored ☐  Other ☒  Hold Auth. ___

Clr: ___   Ven. Year 1985   Ven. Make Chevy   Ven. Mdl. Monte Carlo   Ven. Style 2 Dr

Lic. 1C97   Lic. State A·   Lic. Plt # 517AFK   Lic. Type PC   VIN ___

Special Marking Remarks ___   SRN # ___   NIC # ___

Ven. Class: (Check One)  Wntd ☐  Suspect ☐  Subj of Report ☐  Stolen ☐  Abandoned ☐  Stored ☐  Other ☐  Hold Auth. ___

Clr: ___   Ven. Year ___   Ven. Make ___   Ven. Mdl. ___   Ven. Style ___

Lic. ___   Lic. State ___   Lic. Plt # ___   Lic. Type ___   VIN ___

Special Marking Remarks ___   SRN # ___   NIC # ___

Date ___   Time ___   Supervisor ___

9

## INFORMATION REPORT

Homicide   Inc. Date _1-9-97_ (Thurs)   Inc. Time _2110_   Type Call _Shooting Just Occurred_

_97_   Call Time _2117_   Unit Assgn. _2x80_   Prem _Res_   Geo. Code ___   District Occurred _80_

IF INCIDENT _2817 S. Cumberland_   Adt. ___

ness Name ___   Phone ___

**ssn: (Check One)** Person Reporting ☐ Victim ☐ Suspect ☐ Witness ☒ Owner ☐ Contact ☐ Missing ☐ Runaway ☐ ATL ☐ Wanted ☐

last _Holloway_   first _Perry_   middle ___

Sex _M_ DOB _3-19-76_   HGT ___ ft ___ ins   Wgt ___   Hair Color ___   Eye Color ___

_3601 Rock_   Type _Res_   City _LR_   State _Ar_

_374-3689_  Type _Res_   Driver's Lic. # ___   State ___   Scars; Marks; Aliases ___   Social Sec. # ___

Employment _NONE_   Phone _—_

.ocation of Weapon, Etc.) ___

g Desc: Hat ___   Coat ___   Shirt/Bls ___   Pants/Dress ___   Shoes ___

**Class: (Check One)** Person Reporting ☐ Victim ☐ Suspect ☐ Witness ☐ Owner ☐ Contact ☐ Missing ☐ Runaway ☐ ATL ☐ Wanted ☐

last ___   first ___   middle ___

Sex ___ DOB ___   HGT ___ ft ___ ins   Wgt ___   Hair Color ___   Eye Color ___

ess ___   Type ___   City ___   State ___

Type ___   Driver's Lic. # ___   State ___   Scars; Marks; Aliases ___   Social Sec. # ___

of Employment ___   Phone ___

(Location of Weapon, Etc.) ___

ning Desc: Hat ___   Coat ___   Shirt/Bls ___   Pants/Dress ___   Shoes ___

**'s Class: (Check One)** Person Reporting ☐ Victim ☐ Suspect ☐ Witness ☐ Owner ☐ Contact ☐ Missing ☐ Runaway ☐ ATL ☐ Wanted ☐

ne: last ___   first ___   middle ___

z ___ Sex ___ DOB ___   HGT ___ ft ___ ins   Wgt ___   Hair Color ___   Eye Color ___

dress ___   Type ___   City ___   State ___

ne ___ Type ___   Driver's Lic. # ___   State ___   Scars; Marks; Aliases ___   Social Sec. # ___

ce of Employment ___   Phone ___

o. (Location of Weapon, Etc.) ___

othing Desc: Hat ___   Coat ___   Shirt/Bls ___   Pants/Dress ___   Shoes ___

**eh. Class: (Check One)** Wntd ☐ Suspect ☐ Subj of Report ☐ Stolen ☐ Abandoned ☐ Stored ☐ Other ☐ Hold Auth. ___
Ven. ___ Ven. ___ Ven. ___ Ven. ___
r: ___ Year ___ Make ___ Mdl. ___ Style ___
ic. ___ Lic. ___ Lic. ___ Lic. ___
ear ___ State ___ Plt # ___ Type ___ VIN ___
Decial Marking
.emarks ___   SRN # ___   NIC # ___

**'eh. Class: (Check One)** Wntd ☐ Suspect ☐ Subj of Report ☐ Stolen ☐ Abandoned ☐ Stored ☐ Other ☐ Hold Auth. ___
Ven. ___ Ven. ___ Ven. ___ Ven. ___
:ir: ___ Year ___ Make ___ Mdl. ___ Style ___
.ic. ___ Lic. ___ Lic. ___ Lic. ___
Year ___ State ___ Plt # ___ Type ___ VIN ___
Special Marking
Remarks ___   SRN = ___   NIC # ___

| Date | Time | Supervisor |
|------|------|------------|
|      |      |            |

EXHIBIT
6

## CASE REPORT

IT. FROM PAGE &

MS. HUBBARD WAS INTERVIEWED BY INVESTIGATORS AND
& A TAPED STATEMENT. IN HER TAPED STATEMENT
S. HUBBARD TOLD INVESTIGATORS THAT SHE WAS OUTSIDE
ITTING READY TO WALK ACROSS ROCK ST. WITH PERRY HOLLOWAY.
HEN SHE HEARD APPROXIMATELY (5) FIVE GUNSHOTS.
MS. HUBBARD SAID SECONDS AFTER THE GUNSHOTS SHE
N A BLACK MALE RUNNING TOWARDS HER FROM AROUND
E CORNER OF ONE OF THE APARTMENT BUILDINGS.
S. HUBBARD SAID THE BLACK MALE WAS CARRYING SOME
PE OF HANDGUN IN HIS RIGHT HAND.
MS HUBBARD SAID THAT THE BLACK MALE RUNNING WITH
E GUN LOOKED LIKE A PERSON SHE KNEW TO BE
CHARLIE G''.
MS. HUBBARD SAID THAT AFTER THE BLACK MALE RAN
I HOLLOWAY AND HERSELF, SHE WENT AROUND TO THE
ELT OF CUMBERLAND AT WHICH POINT SHE SAW MARK DROWN
NG ON HIS BACK.
MS. HUBBARD WAS SHOWN A STANDARD L.R.P.D. PHOTO SPREAD
TAINING (6) SIX BLACK MALES. MS. HUBBARD MADE A POSITIVE
ENTIFICATION OF CHARLES ALEXANDER AS THE PERSON SHE KNEW
BE "CHARLIE G".
MS HUBBARD SAID THAT SHE WAS (60%) SIXTY PERCENT
URE THAT MR. ALEXANDER IS THE MAN SHE SAW RUNNING
TH A GUN IN HIS RIGHT HAND. (SEE HUBBARD STATEMENT)
ON 01-10-97 A WARRANT OF ARREST FOR MURDER
RST DEGREE WAS OBTAINED FOR CHARLES ALEXANDER.
ON 01-10-97 AT APPROXIMATELY 0940 HRS MR. ALEXANDER
AS ARRESTED AT HIS RESIDENCE, 911 E. 21ST WITHOUT
IDENT. MR. ALEXANDER WAS TRANSPORTED TO THE DOWNTOWN
ETECTIVE DIVISION WHERE HE WAS READ HIS RIGHTS UNDER
RANDA, WAIVED THOSE RIGHTS; HOWEVER REFUSED TO GIVE A
PED STATEMENT.
THE WARRANT CHARGING MR. ALEXANDER WITH FIRST DEGREE
URDER WAS SERVED AND

EXHIBIT

7



Arkansas Democrat-Gazette/STATON BREIDENTHAL

**Charles Alexander, 18,** of 911 E. 21st St. is escorted Friday from the Little Rock Police Department after being arrested in the shooting death Thursday night of Mark Brown, 19.

ʃ

EXHIBIT
8

59

hearing.

    THE COURT: And what allegation of the Petition does this go to, counsel?

    MS. REECE: Your Honor, this goes to paragraph 17, the failure to conduct a reasonable investigation for the case prior to trial.

    THE COURT: And which portion?

    MS. REECE: It'd be the last one, and to present to the jury concerns or questions as to whether the police had adequate--- Well, it goes to the investigation.

    THE COURT: All right, counsel.  I'll allow you to present your testimony.

THEREUPON,

    ANTHONY CHAMBERS, a witness having been called by and on behalf of the Defense, being first duly sworn, was examined and testified, as follows:

    DIRECT EXAMINATION

BY MS. REECE:

Q    Please state your name for the record.

A    Anthony Dewayne Chambers.

Q    And, Mr. Chambers, what is your position?

A    Teacher/coach at McClellan High School now.

Q    Okay.  Were you a coach for Charles Alexander?

A    That's correct.

Q    And is Mr. Alexander left-handed?

**60**

A     Yes, he is.

Q     Okay.

          MS. REECE: I don't have any other questions.

          THE WITNESS: Okay.

          MR. WHITE: No questions, Your Honor.

          THE COURT: You may be excused, sir.

          (THEREUPON, the witness was excused from the

Rule.)

          THE COURT: Next witness?

          MS. REECE: I believe Mr. Holloway is here, and if

so, I'd like to call him.

          THE COURT: We don't have any bailiffs available

to go call him at this point, so you'll have to call

someone else, counsel, who'll page him.

          MS. REECE: Okay.  Let me see.  I'd like to call

Diane Anderson.

          MR. WHITE: Your Honor, I think I'm going to make

the same objection with respect to Mrs. Anderson.  I

didn't have any knowledge or have any idea what she's

going to testify to.

          THE COURT: Counsel, what does this go to?

          MS. REECE: Basically, Mr. Trimble stated that he

did not disclose to the parties that he previously

represented Darrell Dean or Jamar Dean.  So, her

testimony will just be in corroboration of that.

EXHIBIT
9

27

of identification as Defense Exhibit No. 3 was received

in evidence and made a part of the record hereof.)

MS. REECE: Your Honor, I don't have any other

questions at this point.

THE COURT: Any questions, counsel?

MR. WHITE: No.  Thank you, Your Honor.

THE COURT: You may be excused, sir.

THE WITNESS: Thank you, Your Honor.

MR. WHITE: Your Honor, is Detective Knowles free

to leave?

THE COURT: He may be excused also.

(THEREUPON, the witness was excused from the

Rule.)

THE WITNESS: Thank you, sir.

THE COURT: Next witness, counsel.

MS. REECE: Your Honor, I'd like to call LaQuita

Butler.

THEREUPON,

LAQUITA BUTLER, a witness having been called by

and on behalf of the Defense, being first duly sworn, was

examined and testified, as follows:

DIRECT EXAMINATION

BY MS. REECE:

Q    Please state your name for the record.

A    LaQuita Butler Watson.

Q      And, Mrs. Watson, where are you employed?

A      Commercial Mail.

Q      Okay.  And what's your address?

A      Seventy-four fourteen Mabelvale Pike, Apartment 24.

Q      Okay.  And you testified previously in this case.  Is
that correct?

A      Yes, I did.

Q      Okay.  At the time that you -- You were present -- Well,
at the time that you testified, let me back up.  When you
testified previously, prior to that time and the time of the
incident which happened in January---

A      Uh huh.

Q      --- had you had an occasion to discuss this case with
anyone else?

A      No.

Q      Okay.  Were there any allegations that you heard at that
time concerning---

A      Yeah.  Yeah.

Q      Okay.  And what were those?

A      That he had killed Marquis.

Q      Okay.  So, that was the rumor that you had heard at that
time?

A      Yeah.  Yeah.

Q      Okay.  That night did you or did you not get a look at the
face of the person that was out there that night?

A      I thought I did.

Q      Okay.  Do you think you did?

A      Yeah.

Q      Okay.  Is it possible that you didn't get a look at their face?

A      Yeah, that's possible, too.

Q      Okay.  So, you're saying it's possible that you didn't get a look at the face of the shooter that night?

A      Yeah.

Q      Okay.  Is it possible that when you -- Is it possible, then, that Charles Alexander is not the person that you saw that night?

A      That's who I thought I saw.

Q      You said that-- Is it possible that that's not who you saw?

A      Yeah.

Q      Okay.  Is it possible that you made a mistake when you identified him?

A      I never identified him.  I mean---

Q      But it's possible, is it not, that he's not the person that you saw that night?

A      Yeah.

Q      Okay.  Do you recall at what point you talked to the police concerning this situation?

A      I never did.

30

Q   Okay.  Did you talk to Mr. White about it?

A   Yes.

Q   When did he contact you?

A   Maybe two or three days before the trial.

Q   Okay.  And when were you subpoenaed?

A   The day of the trial.

Q   Okay.  So, you're saying that you knew two or three days prior, then, that they might call you as a witness, but you did not know until the day of the trial that they were going to call you as a witness?

A   Yeah.

Q   Okay.  So, is it true-- It's true, is it not, that you're saying that the prosecution had knowledge of you as a potential witness two to three days prior to the trial?

A   Yeah.

Q   Okay.

          MS. REECE: No other questions.

          CROSS EXAMINATION

BY MR. WHITE:

Q   You're not saying that you know it's three days.  It could have been the day before, right?

A   It could have been.  I would say in between two to three days.

Q   Okay.  And at the trial you remember that I asked you questions---

A     Yeah.

Q     ---throughout the trial, right?

A     Uh huh.

Q     And also that Mr. Trimble, who was representing the
Defendant, asked you questions. Is that correct?

A     Yes.

Q     And you were asked questions about whether or not you
could identify the Defendant as being the person who shot
Marquis.

A     Yes.

Q     Weren't you?

A     Uh huh.

Q     Okay.  And you knew that he was arrested 'cause that was
in the newspaper, right?

A     Yeah.

Q     So, it wasn't just rumors around the neighborhood, but
that had actually been reported in the news?

A     Yeah, I knew, yeah, yeah.

Q     And it wasn't until six or seven months later that the
case actually came to trial?

A     Right.

Q     Thank you.

            THE COURT: Further witnesses?  I mean, further
      questions?

            MS. REECE: I have no other questions.

EXHIBIT
10

Page 1          October 25, 2000
To: Whom ever this letter is concern

I Shakira Hubbard stated to mes
Anderson that I really don't think
that was Charles Alexander - who
killed Margarites and the day of the
trail I told John white that I
did not want to testify against Charles
because I did not think it was him
and John told me I had to or I
would go to jail then the day before
trail I got threating that if I didn't
go along with the trail they was going
to kill my family including me and
I also stated that to John but
didn't no one gave a care about what
I had to say and I really feel like
the prosecuting attorney and others
made me testify or it was either
jail or my family life which includes
my life.

If any one need to contact me my
address is 3003 Vancouver Dr and
my number is 225-8618

Page 2.   October 25, 2000

Also at the time all this took place I
was only a child at the age of 16
I was afraid of what the gang
members said they was going to
do to me and my family and also
I did not pick Charles out of a
line up. The night of the murder
I did not see his face. I'm trying
to help his family by getting the truth
out and getting a Innocent man
free now I'm 20 years old with
children of my own and I wouldn't
want my kids convicted of a crime
they did not do. I Realize now that
I made a bad mistake so please
look at the evidence cause we all
which is Perry, Luanita, and me
was all saying what the gang members
wanted us to say because of the
harsh threats. So please release
Charles Alexander.

-8-2007
my witness this          Sincerely,
gnature by
B. Shakina Hubbard
1-25-2000

EXHIBIT
11

2

with respect to Mr. Holloway, and I don't think it's proper.

MS. REECE: It's addressed in my Amended Motion, Your Honor.

MR. WHITE: And I think the Amended Motion was denied the last time we were in Court.

MS. REECE: The only---

THE COURT: We held this open to call one witness, I believe, and who was that?

MS. REECE: Perry Holloway.

THE COURT: I'm going to allow her to make a record.  You may proceed with your witness, counsel.

MS. REECE: Okay.  Thank you, Your Honor.  Your Honor, I call Perry Holloway to the stand.

THEREUPON,

PERRY HOLLOWAY, a witness having been called by and on behalf of the Defense, being first duly sworn, was examined and testified, as follows:

DIRECT EXAMINATION

BY MS. REECE:

Q    Please state your name for the record.

A    Perry Lynn Holloway.

Q    And, Mr. Holloway, where do you live?

A    Twenty-six oh one Rock.

Q    Okay.  It's true, is it not, that you testified at the

murder case of Charles Alexander in July of 1997?

A     Yes.

Q     Okay.  And it's true, is it not, that at that time that you testified that you thought that it was Mr. Alexander that you saw running around the corner of the building?

A     Yes.

Q     It's true, is it not, that you testified---

          MR. WHITE: I'm going to object to leading, Your
     Honor.

          THE COURT: These seem to be preliminary matters,
     counsel.  Go ahead.  Move along.

BY MS. REECE:

Q     Do you believe now that you made a mistake in identifying my client?

          THE COURT: That is leading, counsel.

          MS. REECE: Okay.

BY MS. REECE:

Q     Why did you agree to come testify here today,
Mr. Holloway?

A     Because I believe I made a mistake.

Q     Okay.  In what?

A     In saying Charlie G ---

          THE COURT: I can't hear the witness, counsel.

BY MS. REECE:

Q     Can you speak up, Mr. Holloway?

4

A     Yes.  What was the question?

Q     I asked you if you felt that you made a mistake.  You said yes, and then I said in what?

A     In identifying Charles Anderson (sic).

Q     Okay.  Are you recanting your testimony here today?

A     Yes, I am.

Q     And do you recognize the Defendant here?

A     Yes.

Q     Okay.  So, you're recanting your testimony from the earlier hearing?

A     Yes.

Q     Okay.

          THE COURT: Any questions?

          CROSS EXAMINATION

BY MR. WHITE:

Q     How are you, sir?

A     All right.

Q     Why are you going, say you're recanting your story?

A     Why am I saying that?

Q     Uh huh.

A     'Cause I believe I made a mistake.

Q     Had you come here on your own?

A     Yes.

Q     You look like you're wearing an orange outfit.  You wear that around on the street?

Cr 97-1450

EXHIBIT
12

Att'n Judge Langston
My name is Mrs. Eleanor Brown
2 yrs ago my son was Killed. The Guy
charged with his murder was Charles
Alexander but he did not commit the
crime. In my heart I did not believe
he committed this crime in the first
place but now I have proof that he
didn't. I didn't have proof at first but
several people have came forward And
told me what really happened. This Guy
who was the accused was my son's best
friend and I knew he could not of did
this crime. I feel the Guy should have
another trial so if he is innocent we
can get him free. It's not right for
him to have to pay for a crime he did
not commit. And now that I have
proof of who actually killed my son I think
you should do what is right. (Let him go)
I do want an innocent person Jail
for something he did not do. So please
give this boy a chance to prove his innocence.
I hope this letter touches your heart. I
know it will not bring my son back but at
least we will know the truth. Thank you.
May God Bless You   Mrs. Eleanor Brown



# C E R T I F I C A T I O N

State of Arkansas } SS
County of Pulaski. }

I, Carolyn Staley, Clerk of the Circuit Court, within and for the County and State aforesaid, do hereby certify that the foregoing is a true and correct copy of the _____ *Letter* _____ on file in this office in the above entitled cause.

In Testimony Whereof, I have hereunto set my hand and affixed the seal of said Court this _17_ day of _July_ to 2000.

CAROLYN STALEY, Circuit County Clerk

By _____
        Deputy Clerk

Jack this is the letter
Dana Reece talked to you
a bout. Please make sure the
Judge get it
Thanks

Eleanor Brown
209 E 22nd
L A 72002
ph. 3722978
Will come & talk to you in
person

Attn: Jack Tucker

Honorable Judge Langston

From: Mrs. Eleanor Brown

401 W.
Markham

4th division
4th fl
Oct. 04 1:00
Judge Langston
-or-
Jack Tucker
only

Back to
Search
Results

# Inmate Population Information Search

**INMATE DETAILS**

## Information Current as of 12/13/2004



ADC Numb

Nam

Rac

S

Hair Col

Eye Col

Heig

Weig

Birth Da

Initial Receipt Da

Current Facili

PE / TE Dat

Total tim

* may be affecte

regulations

| Aliases | Scars, Marks, & Tattoos: |
|---|---|
| | **Description** |
| | TATTOO LEFT LOWER ARM 19 ST CRIP |

### Current Prison Sentence History

| Offense | Sentence Date | County | Case # | Sentence Length |
|---|---|---|---|---|
| Battery-1st Degree | 06/16/1998 | PULASKI | 1998 - 293 1998 | 168 mo. |

```
RN:    326999        FLAG:
AME:  JONES,MARQUIS,DENAGLO            BLACK    MALE    05/17/1979 6'00"
DL    429452136      OID    900035460          SSN    429452136
 CHARGE CODE    CHARGE DESCRIPTION             DISP   SPD/LM   FINE
```

| | | DISP | SPD/LM | FINE | |
|---|---|---|---|---|---|
| 12/30/1997 TCK: | BOOKING: 6635973 | 03/17/1998 FILED DIRE | | | |
| 5-13-201 | BATTERY,1ST DEGREE | CIRC 97-17941 | | 0.00 | 0 |
| 5-13-204 | ASSAULT,AGGRAVATED | CIRC 97-17942 | | 0.00 | 0 |
| 5-13-204 | ASSAULT,AGGRAVATED | CIRC 97-17943 | | 0.00 | 0 |
| 08/31/1997 TCK: | BOOKING: 6637393 | 09/15/1997 CERTIFIED | | | |
| 5-36-106 | THEFT BY RECEIVING | CIRC 97-12006 | | 0.00 | 0 |
| 5-64-401 | POSSESSION OF DRUGS | CIRC 97-12007 | | 0.00 | 0 |
| 5-73-120 | CARRYING A WEAPON | CIRC 97-12008 | | 0.00 | 0 |
| 06/04/1997 TCK: | BOOKING: 81997 | 06/05/1997 CERTIFIED | | | |
| 5-3-201 | CRIMINAL ATTEMPT | CIRC 97-8009 | | 0.00 | 0 |
| 10/23/1996 TCK: | BOOKING: 75385 | 10/24/1996 CERTIFIED | | | |
| 5-13-204 | ASSAULT,AGGRAVATED | CIRC 96-16081 | | 0.00 | 0 |
| 5-54-125 | FLEEING | CIRC 96-16082 | | 0.00 | 0 |

```
-HELP    2-MOD    3-EXIT    7-BACK    8-FRWD    13-TRF    14-ENV    15-ACIC    18-PAY
```

EXHIBIT
14

# QUEST RESEARCH

P.O. Box 34077, , Little Rock, AR 72203
501/374-4712    Fax 501/374-3025

## SEARCH REPORT

'#: JOHNSON, M
ERER: CHARLES ALEXANDER                QUEST#: 385000001
PANY: CHALES ALEXANDER/RYAHIM #111 ORDERED: 02/01/2005 COMPLETED: 02/04/2005
RESS: VARNER SUPERMAX UNIT
       PO BOX 400                SEARCHED THROUGH: 01/28/2005
       GRADY, AR 71644            TYPE OF REPORT: -Miscellaneous

    NAME GIVEN: JOHNSON, MARCUS
          State: AR

## JUDGMENT INFORMATION

10/23/1996 AGGRAVATED ASSAULT Judgment CASE#: 96-16081:

10/23/1996 FLEEING Judgment CASE#: 96-16082:

06/04/1997 CRIMINAL ATTEMPT Judgment CASE#: 97-8009:

08/31/1997 THEFT BY RECEIVING Judgment CASE#: 97-12006:

08/31/1997 POSSESSSION OF DRUGS Judgment CASE#: 97-12007:

08/31/1997 CARRING A WEAPON Judgment CASE#: 97-12008:

12/30/1997 1ST DEGREE BATTERY Judgment CASE#: 97-17941:

12/30/1997 AGGRAVATED ASSAULT Judgment CASE#: 97-17942:

12/30/1997 AGGRAVATED ASSAULT Judgment CASE#: 97-17943:

**MARKS:**
OFFICE; PULASKI COUNTY, ARKANSAS, CIRCUIT COURT CLERK

SCOPE; CRIMINAL SEARCH, 10 YEARS

NOTE; ALL CASES ALSO LISTED UNDER MARCUS JOHNSON DOB 5/17/80.  WOULD NOT
    PRINT MARCUS JOHNSON-DEFAULTED TO MARQUIS JONES.

: information contained in this report was obtained from public records. While Quest Research makes every effort to provide
urate and complete reports, we cannot be assured of the accuracy of indexes maintained by others. Quest Research makes no
resentations,warranties or guarantees as to the completeness of this report and will accept no liability for

EXHIBIT
15



EXHIBIT
16

*Amended to add ___ ____*
*_____ hab.*

FILED

98 JUN -1 AM 10: 23

CAROLYN STALEY
CIRCUIT COUNTY CLERK

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

4   DIVISION

STATE OF ARKANSAS                                           PLAINTIFF

vs.

MARQUIS DEWAYNE JONES      BM      97-349            DEFENDANT
a/k/a MARCUS  JOHNSON

"*Amended*"
## FELONY INFORMATION
### COUNT   1

Larry Jegley, Prosecuting Attorney of the Sixth
Judicial District of Arkansas, in the name, by the authority, and on
behalf of the State of Arkansas charges  MARQUIS DEWAYNE JONES
a/k/a MARCUS  JOHNSON  with the crime of violating Ark. Code Ann.
5-13-310 TERRORISTIC ACT  committed as follows, to-wit:  The said
defendant(s), in Pulaski County, on or about September 26, 1996,
unlawfully, feloniously, while not in the commission of a lawful act,
shot at or in any manner projected an object with the intent to cause
injury to persons or property at a conveyance which is being operated
or which is occupied by passengers, to wit:  Dewayne Boone, against
the peace and dignity of the State of Arkansas.


## MISDEMEANOR INFORMATION
### COUNT   2

Larry Jegley, Prosecuting Attorney of the Sixth
Judicial District of Arkansas, in the name, by the authority, and on
behalf of the State of Arkansas charges MARQUIS DEWAYNE JONES
a/k/a MARCUS  JOHNSON  with the crime of violating Ark. Code Ann.
5-54-125 FLEEING  committed as follows, to-wit:  The said
defendant(s), in Pulaski County, on or about September 26, 1996,
unlawfully, did flee from duly authorized law enforcement officers
with the Little Rock Police Department, knowing that his immediate
arrest or detention was being attempted, against the peace and dignity
of the State of Arkansas.

PROSECUTOR NUMBER: 97-0232                    PAGE NUMBER   2

Defendant MARQUIS DEWAYNE JONES a/k/a MARCUS  JOHNSON has been found
guilty of more than one (1) but less than four (4) felonies. and
consequently his/her sentence should be increased as provided for in
Ark. Code Ann. 5-4-501(a)  against the peace and dignity of the State
of Arkansas.


       Larry Jegley                    By _____
     Prosecuting Attorney                  Deputy Prosecuting Attorney

Subscribed and sworn to before me on this _ day of . _____, 19_.

       Carolyn Staley                 By _____
       Circuit Clerk                      Deputy Circuit Clerk




PROSECUTOR NUMBER: 97-0232
DEFENDANTS ON INFORMATION --- --- --

MARQUIS DEWAYNE JONES   (BM)   05/17/80
a/k/a MARCUS  JOHNSON
  2100 PULASKI. LITTLE ROCK. AR TRN 425993    SID:
  BOND REQUIRED: $5000.00
  CUSTODY STATUS: PUL.COUNTY JAIL      ARREST DATE: 10/23/96



  WITNESSES

7
EXHIBIT
17

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
DIVISION

STATE OF ARKANSAS                                    PLAINTIFF

vs. NO. CR97-2197

MARCUS JOHNSON                                       DEFENDANT
AKA ~~MARQUIS JONES~~

FELONY INFORMATION
COUNT 1

Larry Jegley, Prosecuting Attorney of the Sixth Judicial
District of Arkansas, in the name, by the authority, and on
behalf of the State of Arkansas, charges MARCUS JOHNSON AKA
~~MARQUIS JONES~~ with the crime of violating Ark. Code Ann.5-3-201
CRIMINAL ATTEMPT TO COMMIT MURDER IN THE FIRST DEGREE, committed
as follows, to wit: The said defendant(s), in Pulaski County, on
or about APRIL 18, 1997, did purposely engage in conduct that
constituted a substantial step in a course of conduct intended
to culminate in the commission of Murder in the First Degree of
DERRICK WILLIAMS, whether or not the attendant circumstances were
as he believed them to be, to-wit: with the purpose of causing
the death of another person, he attempted to cause the death of
DERRICK WILLIAMS, against the peace and dignity of the State of
Arkansas.

LARRY JEGLEY
PROSECUTING ATTORNEY                    By
                                           Deputy Prosecuting Attorney

Subscribed and sworn to, before me, on this 10 day of

July , 1997.

CAROLYN STALEY
CIRCUIT CLERK

                                        By:
                                           Deputy Circuit Clerk

PROSECUTOR NUMBER: PC 97 001981
mDEFENDANTS ON INFORMATIONm

MARCUS JOHNSON   05/17/1980
AKA MARQUIS JONES
2100 PULASKI
LITTLE ROCK
BOND REQUIRED: $100000.00 SURETY BOND
CUSTODY STATUS:  PULASKI COUNTY JAIL    SID#:   732756
ARREST DATE:  06/04/1997
ARREST TRACKING# 00471166
RACE: BLACK
GENDER:  M


mWITNESSESm
MICHAEL TERRY        VINCENT WALLACE
BRIAN PREWITT        LEE JONES
                     HOWARD FOREMAN
JAMES TANKERSLEY     ALAN PHILLIPS
MICKEY HOLLOWAY      ALAN JONES
                     INA NELSON
STAN WILHITE         TIJUANA TAYLOR
NATASHA MARTINDALE   KENNETH HAWK
ANN MCCLAIN          SAMUEL DOTSON
RONNIE A SMITH       BILL TREADWAY
ERIC KNOWLES         NIKKI TAYLOR
MELVIN VESTER        HERBERT LOVE

2R972197
2R974254
2R97349
2R974221

EXHIBIT
18

FILED

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS28 AM 8:13
DIVISION

CAROLYN STALEY
STATE OF ARKANSAS                                    PULASKI COUNTY CLERK

vs. NO. ___CR99293___

MARCUS JOHNSON                                    DEFENDANT
AKA MARQUIS D JONES

### FELONY INFORMATION
### COUNT 1

Larry Jegley, Prosecuting Attorney of the Sixth Judicial
District of Arkansas, in the name, by the authority, and on
behalf of the State of Arkansas, charges MARCUS JOHNSON AKA
MARQUIS D JONES with the crime of violating Ark. Code Ann.5-13-201
BATTERY IN THE FIRST DEGREE, committed as follows, to wit: The
said defendant(s), in Pulaski County, on or about NOVEMBER 22,
1997, with the purpose of causing physical injury to another
person, did cause physical injury to LISA DAVIS by means of a
firearm, against the peace and dignity of the State of Arkansas.

### FELONY INFORMATION
### COUNT 2

Larry Jegley, Prosecuting Attorney of the Sixth Judicial
District of Arkansas, in the name, by the authority, and on
behalf of the State of Arkansas, charges MARCUS JOHNSON AKA
MARQUIS D JONES with the crime of violating Ark. Code Ann.5-13-204
AGGRAVATED ASSAULT, committed as follows, to wit: The said
defendant(s), in Pulaski County, on or about NOVEMBER 22, 1997,
unlawfully, feloniously, under circumstances manifesting extreme
indifference to the value of human life, did purposely engage in
conduct that created a substantial danger of death or serious
physical injury to ALLISON MINOR, against the peace and dignity of
the State of Arkansas.

## FELONY INFORMATION
## COUNT   3

Larry  Jegley,  Prosecuting  Attorney  of  the  Sixth  Judicial
District  of  Arkansas,  in  the  name,  by  the  authority,  and  on
behalf  of  the  State  of  Arkansas,  charges  MARCUS  JOHNSON  AKA
MARQUIS D JONES with the crime of violating Ark. Code Ann.5-13-204
AGGRAVATED ASSAULT, committed as follows, to wit:  The said
defendant(s),  in  Pulaski  County,  on  or  about  NOVEMBER  22,  1997,
unlawfully,  feloniously,  under  circumstances  manifesting  extreme
indifference  to  the  value  of  human  life,  did  purposely  engage  in
conduct  that  created  a  substantial   danger  of  death  or  serious
physical  injury  to  T.J.  LOONEY,  against  the  peace  and  dignity  of
the  State  of  Arkansas.

LARRY JEGLEY
PROSECUTING ATTORNEY          By: _____ _____
                                   Deputy Prosecuting Attorney

Subscribed and sworn to, before me, on this _____ day of
_____, 19 ____

CAROLYN STALEY
CIRCUIT CLERK

                              By: _____
                                   Deputy Circuit Clerk

EXHIBIT
19

ARKANSAS CRIME INFORMATION CENTER
ARKANSAS ARREST / DISPOSITION REPORT   637393

DEFENDANT IDENTIFICATION

Arresting Agency Name: L.R.P.D.
ORI Code: AR0600200

AKA: JOHNSON   MARCUS   DEWAYNE
JONES   MARQUES

Address: 3012 W 15

City & State: LITTLE ROCK   AR

Sex: M   Race: BLK   Hair: BLK
Eyes: BRN   Height: 180   Weight: 60

Date of Birth: 05 17 80   Age: 17   Place of Birth: L.R. AR

Comp: MED   Build: MED   SIA

Name of Nearest Relative: TINA JONES (MOTHER)
Home Address: 3012 W 15   City, State: L.R. AR

ARREST   PLEASE PRESS HARD - You are making five copies

Place of Arrest: I-630 (W.B.) + PINE   Arresting Officer: ROBERTSON 1532.6

Date of Arrest: 08-3-97   Time of Arrest: 0150   Bail: NONE   Case No.: 97-141352   Agency: L.R.P.D.   Agency Transferred to: P.C.S.O.

| No. | Court/Case No. | Victim No. | Counts | Charge/Status | ... | Date of Trial |
|---|---|---|---|---|---|---|
| 1 | 97-12006 | 536108 | 1 | THEFT BY RECEIVING | | |
| 2 | 97-12007 | 544901 | 1 | POSS OF COCAINE | | |
| 3 | 97-12008 | 575120 | 1 | CARRYING A WEAPON (GUN) | | |
| 4 | | | | | | |

Facts of Arrest (Explain in Detail):
SUBJECT WAS STOPPED ON I-630 IN A STOLEN VEHICLE. WHEN OFFICERS SEARCHED THE VEHICLE THEY FOUND A GUN AND 3 WHITE ROCK LIKE SUBSTANCE.
THE SUBJECT WAS CHARGED AS AN ADULT, WITH CARL EVANS

Court Date: 09-02-97   Court Trying Case: L.R.M.C.

22_00_697   Page 10

CIRCUIT    . COURT OF PULASKI COUNTY,   RKANSAS
APPEARANCE AND EXECUTION DOCK...

EXHIBIT
20

CR 97 001450          Judge:4TH - HON. JOHN LANGSTON   File Date:05/02/1997  (F
                      Status:CLOSED                    Stat Date:07/23/1997

| Title of Case | Charges | Description | Disp. | Da |
|---|---|---|---|---|
| STATE OF ARKANSAS | 510102FY | MURDER - 1ST DEGREE | C | 07/ |
| —vs.— | | | | |
| CHARLES E ALEXANDER | | | | |

| Date of | Page | Pleadings Filed, Orders and Decrees | Amou |
|---|---|---|---|
| 05/02/97 | | SURETY BOND REQUIRED | |
| | | AMOUNT: 250,000.00 | |
| | | DEFENDANT: ALEXANDER,CHARLES E | |
| | | ACTIVE | |
| 05/02/97 | | BENCH WARRANT | |
| | | WARRANT ISSUED ON: 05/02/1997 | |
| | | FOR: ALEXANDER,CHARLES E | |
| | | 97-1299 | |
| 05/07/97 | | PLEA/ARRAIGNMENT 05/13/1997  08:15 AM | |
| | | JUDGE:4TH - HON. JOHN LANGSTON LOC:440 | |
| | | PLEA/ARRAIGNMENT | |
| 5/08/97 | | MOTION FOR DISCOVERY DEF | |
| 5/13/97 | | PLEA & ARRAIGNMENT DEF APPEARED WITH ATTY WV READ | |
| | | JT & OR SET | |
| 5/13/97 | | OMNIBUS HEARING 06/06/1997  08:30 AM | |
| | | JUDGE:4TH - HON. JOHN LANGSTON LOC:440 | |
| | | OMNIBUS HEARING | |
| 5/13/97 | | JURY TRIAL 07/23/1997  08:00 AM | |
| | | JUDGE:4TH - HON. JOHN LANGSTON LOC:440 | |
| | | JURY TRIAL | |
| 5/14/97 | | BENCH WARRANT | |
| | | WARRANT SERVED ON: 05/14/1997 | |
| | | FOR: ALEXANDER,CHARLES E | |
| | | 97-1299 | |
| | | RETURNED ON 5-14-97 | |
| 6/06/97 | | OMNIBUS HEARING DEF APPEARED WITH ATTY NO NOT DISC | |
| | | SATISFIED OFFER MADE WITH EXCHANGED GENERAL DENIAL | |
| | | TRIAL TO PROCEED | |
| 7/20/97 | | NOTICE OF INTENT TO USE EVID OF OTHER CRIMES WRONG | |
| | | OR ACTS/STATE | |
| 7/25/97 | | SUBPOENA SERVED (PROSECUTOR) CESAIRE ONUFRIE | 25.0 |
| | | 7/22/97 | |
| 7/30/97 | | SUBPOENA SERVED (PROSECUTOR) FRANK J PERETTI | 25.0 |
| | | 7/22/97 | |
| 7/30/97 | | SUBPOENA SERVED (PROSECUTOR) DAVID JEKAR DEAN | 25.0 |
| | | 7/22/97 | |
| 7/30/97 | | SUBPOENA NON EST LINDA OFC 12166 HUDSON | 10.0 |
| | | 7/22/97 | |
| 7/30/97 | | SUBPOENA NON EST ERIC DET KNOWLES | 10.0 |
| | | 7/22/97 | |
| 7/30/97 | | SUBPOENA NON EST C DET WELVER | 10.00 |
| | | 7/22/97 | |

CIRCUIT   . COURT OF PULASKI COUNTY,   ARKANSAS
APPEARANCE AND EXECUTION DOCK .

| 97 001450 | Judge:4TH - HON. JOHN LANGSTON File Date:05/02/1997 (Pg |
| | Status:CLOSED                          Stat Date:07/23/1997 |

| Title of Case | Charges | Description | Disp. | Date |
|---|---|---|---|---|
| TE OF ARKANSAS | 510102FY | MURDER - 1ST DEGREE | C | 07/23/ |
| ~vs.~ | | | | |
| RLES E ALEXANDER | | | | |

| e of | Page | Pleadings Filed, Orders and Decrees | Amount |
|---|---|---|---|
| 08/97 | | SUBPOENA NON EST MELVIN DET VESTER 7/22/97 | 10.00 |
| 08/97 | | SUBPOENA NON EST M HOLLOWAY 7/22/97 | 10.00 |
| 24/97 | | AMENDED FELONY INFORMATIO N TO ADD SMALL HAB | |
| 26/97 | | SUBPOENA NON EST SHAKIRA HUBBARD 7-22-97 | 10.00 |
| 22/97 | | JURY TRIAL 07/23/1997  09:00 AM JUDGE:4TH - HON. JOHN LANGSTON LOC:440 JURY TRIAL CONT | |
| 22/97 | | WITNESS FEES JAMES ALBROOK 7-22-97 | 5.00 |
| 22/97 | | ORDER FORTHWITH FOR LAQUITA BUTLER FRO 7-22-97 | |
| 22/97 | | COURT APPEARANCE DEF APPEARED WITH ATTY STATES MOT FOR CONT NEWLY DISCOVERED WITN EYEWITNESS DENIED PARTIES ANNOUNCED READY JURY SELECTED & SWORN TRIAL BEGUN RECESSED FOR EVENING | |
| 23/97 | | SUBPOENA SERVED (PROSECUTOR) SHAKIRA HUBBARD 7-22-97 | 25.00 |
| 23/97 | | WITNESS FEES SHAKIRA HUBBARD 7-22-97 | 5.00 |
| 23/97 | | WITNESS FEES M. HOLLOWAY 7-22-97 | 5.00 |
| 23/97 | | WITNESS FEES ERIC KNOWLES 7-22-97 | 5.00 |
| 23/97 | | WITNESS FEES C. WEAVER 7-22-97 | 5.00 |
| 23/97 | | JURY TRIAL DEF APPEARED WITH ATTY TRIAL RESUMED DE FOUND GUILTY OF MURDER 1ST | |
| 23/97 | | SENTENCE DEF SENT TO LIFE IN ADC DEF NOTIFIED OF RIGHT TO APPEAL | |
| 23/97 | | SPEED LETTER COMM TO FOLLOW | |
| 29/97 | | JUDGMENT FILED | |
| 30/97 | | SUBPOENA SERVED (PROSECUTOR) THEOTIS BROWN | 25.00 |



it.  Okay.  That'll make the record clear, and we'll proceed.  Thank you.

DEFENDANT: Thank you, Judge.

MR. WHITE: Thank you, Your Honor.

MR. TRIMBLE: All right.

(THEREUPON, in Open Court, the proceedings continued, as follows:)

THE COURT: The case before us is 97-1450, State versus Charles E. Alexander.  State ready to proceed?

MR. WHITE: State's ready, Your Honor.

THE COURT: Defense ready to proceed?

MR. TRIMBLE: Defense is ready, Your Honor.

THE COURT: All right.  Call the roll of the jury, please.

(THEREUPON, the clerk called the roll of the jury.)

THE COURT: Any juror present whose name was not called?  Yes, sir.

PROSPECTIVE JUROR: Doug Dougan.  I think I'm supposed to be in Humphrey's Court, sir.  I think I followed the wrong crowd.

THE COURT: That can happen.  All right.  We had another hand.  Yes, ma'am?

PROSPECTIVE JUROR: Pam Savicki.

THE COURT: All right.  Anyone else?  (No

EXHIBIT
22

THE COURT: Yes.

(THEREUPON, the documents were marked for purposes

of identification as Defense Exhibit No. 10 and 11.)

BY MS. REECE:

Q     Mr. Trimble, is that the jury list that was given to you

at trial of this matter in July of 1997?

A     It looks to be, yes.

Q     Okay.  Do you see the name of Pam Sabecy on that witness

(sic) list?

A     I believe this is a jury list.

Q     Jury list, excuse me.  Do you see her name on that list?

A     I don't believe so.

Q     Okay.  And is this a list of the people that were seated

on the jury?

A     I suppose.

Q     Okay.  Are you aware of the fact that Pam Sabecy was

seated as a juror in this case?

A     I'm not sure.  I don't know.

Q     Now, do you recall a juror by the name of Suzanne Godwin?

A     No, ma'am.  I don't recall any jurors by name.

Q     Do you recall concerns that she had?  Well, do you recall

that she was friends with the parents of Elizabeth Thomas, one

of the deputy prosecuting attorneys?

A     I don't recall that, ma'am.

Q     Okay.  Do you recall that at one point she said she wasn't

## Jury List
### 7/22/97


EXHIBIT
23

| | | |
|---|---|---|
| 1 | 72115 | Ruby Laws 62 |
| 2 | ~~72144~~ | ~~Willie Mae Thomas~~ |
| 3 | 72129 | Charlotte Robertson 39, Pharmacist |
| 4 | 72130 | Joe Richbourg 47 Sales man. |
| 5 | 72132 | Deborah Talley 46, LPN |
| 6 | 72134 | Janet Broadaway 34, Typist |
| 7 | 72145 | Robert Adams, 26, Contractor |
| 8 | 72146 | Ann Anderson, 62, Real estate - KNOWS DPA |
| 9 | 72151 | ~~Jeanie Butler~~ 52, manager |
| 10 | 72152 | Lue Barrett, 52, Child care |
| 11 | 72153 | ~~Mary Ann Rinken~~, 57 Sales |
| 12 | 72154 | Melvin Ledbetter, 49, Heat & Air |
| 13 | 72162 | Shirley Clardy, 43, Admin |
| 14 | 72164 | Jenley Williams, 30, Bank teller |
| 15 | 72165 | Alton Files, 44, TCBY Exec |
| 16 | 72172 | Owen Moon, 63, retired |
| 17 | 72175 | Tina Gaston, 37, real estate |
| 18 | 72177 | Loretta DePalo, 38, M.D. |
| 19 | 72182 | Arthur Stoker, 58, Kroger emp. |
| 20 | 72187 | Vonda Odom, 29, employment - blank |
| 21 | 72190 | Susan Grady, 49, Housekeeper |
| 22 | 72194 | ~~Janice Francis~~, 37, Teacher |
| 23 | 72203 | Margaret Glasgow, 33, RN |
| 24 | 72212 | Calvin Covington 46, masters Degree, Wife - Legal Ser. Secretary |
| 25 | 72214 | Roberta Overman, 44, State Tax worker |
| 26 | 72216 | ~~Mary Baxley~~, 56, Teacher |
| 27 | 72217 | Lucie Pathmann, 28, Marketing. KNOWS Elizabeth, DPA |
| 28 | 72219 | Jean Dabbs 58, Husband is an attorney, she is housewife |
| 29 | 72221 | Karl Strickland, 68, retired |
| 30 | 72226 | Bonnie Heer, 58, Secretary |
| 31 | 72227 | Cecilia Fussell, 34, Modern Image System. KNOWS Charles, SR. |
| 32 | 72229 | Suzanne Godwin, 52, Housewife, KNOWS Elizabeth, DPA |
| 33 | 72230 | Bobby Buzbee, 65, retired |
| 34 | 72232 | Ronald Collins, 48, Top of the line, KNOWS Charles, SR. |
| 35 | 72233 | Lambert Dyer, 35, respiratory Specialist |
| 36 | 72234 | Melody Dycus, 41, Schedule Coordinator |
| 37 | 72235 | Joseph Williford, 48, Masters Degree, State employee |
| 38 | 72236 | ~~Barbara Cooms~~ 59, Tyson Foods |
| 39 | 72247 | Ernie Bailey, 54, ~~Bridgestone Firestone~~ 35, Audiovisual Super. |
| 40 | 72251 | ~~Keith Peterson~~, 40, 2yrs College, Collector |


DEFENDANT'S
EXHIBIT
NO. 10

Jury Selection Chart
Fourth Division Circuit Court

Case No. _____     Defendant: _____     Date: 7-22-97

State Strikes:          Defense Strikes:          Court Strikes:

| | | | | | | |
|---|---|---|---|---|---|---|
| Joseph Williford | | | | | | |
| Joshua Cogburn | Ronnie Herr | TiNA Gaston | Bixby Burbee | Pamela Sabey | Suzanne Godwin | |
| | Ernie Bailey | | | | | |
| 12 | 11 | 10 | 9 | 8 | | 7 |

| 6 | 5 | 4 | 3 | *2 | 1 |
|---|---|---|---|---|---|
| Vonda O'Dom | Melvin LeBlatte | Dean Dabbs | Lambert Miller | Kurt Strickland | Celine Louisiata |
| | | | | Ronald Collins | |
| | | | | Deborah Talley | |
| | | | | Susan Grubly | |

1st. Alternate: Arthur Stoker    2nd Alternate: _____

3rd Alternate: _____

DEFENDANT'S
EXHIBIT
NO. 11

EXHIBIT
24

INSTRUCTION NO. *18*

## VERDICT FORM

We, the Jury, find Charles Alexander guilty of Murder in the First Degree.

**FOREPERSON**

EXHIBIT
41

## INSTRUCTION NO. _____

## VERDICT FORM
## CLASS Y FELONY

We, the Jury, having found Charles Alexander guilty of Murder in the First Degree, fix his sentence at:

A term of _____ *Life* _____ in the

(not less than 10 years nor more than 60 years or for life)

Arkansas Department of Correction.

_____
**FOREPERSON**



are that at 2817 Cumberland January the 9th it was nighttime.  The Defendant's alleged to have run around the side of a building, and shot Marquis Brown and ran away, where Marquis Brown died in front of 2817 Cumberland.  Yesterday I found out about a witness.  I ended up getting a hold of her about nine o'clock or 9:30 last night, found out that she was able to identify the Defendant.  Up until last night when I talked to her my case was pretty much a circumstantial evidence case.  With her my case goes from circumstantial to an eye witness case.  The arrest date in this case was January the 10th of 1997.  I hadn't asked for a continuance in the past.  I think that even though she's not necessary, she would be extremely important.  This is a murder case, and while I am loath to ask for a continuance, I think that it'd be in the best interests of the State for us to be able to have her and put her on.

THE COURT: Would not a forthwith subpoena avail you of the same thing?

MR. WHITE: Pardon me, Your Honor?

THE COURT: Would not a forthwith subpoena avail you of this same testimony?

MR. WHITE: It might.  She has not been subpoenaed. I hadn't even found about her until yesterday, or I

EXHIBIT

26

8

provide just exactly what---

THE COURT: What motion is that?

MR. WHITE: It was a Rule 404(b) motion, Your
Honor, and it was actually about other conduct which
Mr. Trimble and I have talked about. It's testimony
going to the Defendant's motive and committing this
crime. On December the 29th there was a fight at the
basketball court. The Defendant ran away, and when he
came back, his car was missing. He accused David Dean,
Jamar Dean of having taken it. In the meantime there
is a witness who will testify that she heard him
talking about that he was going to catch David Dean
slipping, and he wasn't going to let him get away with
that. And then on January the 9th Marquis Brown was
shot outside David Dean's girlfriend's apartment.
David Dean and Marquis Brown are about the same size.
Marquis was wearing David Dean's coat and getting in
David Dean's car. And I think that that goes to his
motive in this case.

THE COURT: Okay. Do you wish to respond, sir?

MR. TRIMBLE: Your Honor, first of all, the
decedent, Marquis Brown, as I understand it, is about
five feet seven and weighed 237 pounds. This other
person, David Dean, weighs about 165 pounds and is six
two. That's the first. It's very clear that there's

EXHIBIT
27

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

__FOURTH__ DIVISION 29

STATE OF ARKANSAS · PLAINTIFF

VS.     CR · 97-1450

CHARLES ALEXANDER     DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
## PROSECUTOR'S REPORT
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PURSUANT TO ARK. CODE ANN. SECTION 12-27-113, THE FOLLOWING CONSTITUTES A REPORT OF THE ATTENDING CIRCUMSTANCES OF THE OFFENSE(S) OF WHICH THE ABOVE DEFENDANT IS CONVICTED:   SEE ATTACHED

(attach additional information if necessary)

DATE:   7-28-97

DEPUTY PROSECUTOR

CIRCUIT JUDGE

## CASE REPORT

IDENT NUMBER:     97-4304

RGE:     MURDER 1st

SE NUMBER:     97-0410

VESTIGATOR:     Detective Eric KNowLes

CTIM:     MARKeuius BRowN, B/m 111277

CATION:     2817 S. CumBeRLAND

TE AND TIME:     01-09-97, 2110

SPECT:     CHARLes E. ALexANDeR, Bm, 10067

## SUMMARY

ON 01-09-97 AT APPROXIMATELY 2117 HRS. L.R.P.D. PATROL OFFICERS RESPONDED TO 2817 S. CumBeRLAND ON A SHOOTING JUST OCCURRED.

ON ARRIVING, OFFICERS (HUDSON / Holt - 2x80) LOCATED A BLACK MALE LYING ON HIS BACK ON THE SIDEWALK IN FRONT OF 2817 S. CumBeRLAND. THE BLACK MALE, WHO WAS IDENTIFIED AS MARK BROWN APPEARED TO BE SUFFERING FROM ATLEAST ONE GUNSHOT WOUND TO THE BODY.

MEMS AND L.R.F.D RESCUE PERSONNEL RESPONDED TO THE SCENE. IT WAS DISCOVERED THAT MR. BROWN HAD BEEN SHOT TWICE, ONCE IN THE LEFT THIGH AND ONCE IN HIS RIGHT LOWER BACK.

MR. BROWN WAS TRANSPORTED BY MEMS TO U.A.M.S WHERE HE WAS PRONOUNCED DEAD AT APPROXIMATELY 2155 HRS. BY DR. P. DURAN.

AT APPROXIMATELY 2125 HRS. L.R.P.D. DETECTIVES AND C.S.S.U. PERSONNEL RESPONDED TO 2817 S. CumBeRLAND WHERE SEVERAL WITNESSES WERE LOCATED AND THE

## CASE REPORT

I. FROM PAGE 1

RIME SCENE PROCESSED.

SHAKIRA HUBBARD AND PERRY HOLLOWAY WERE TWO INESSES LOCATED AT THE CRIME SCENE AND BOTH WERE ANSPORTED TO THE L.R.P.D. DETECTIVE DIVISION TO GIVE ATEMENTS.

MR. HOLLOWAY WAS INTERVIEWED BY INVESTIGATORS O GAVE A TAPED STATEMENT. IN MR. HOLLOWAYS TAPED ATEMENT HE TOLD INVESTIGATORS THAT MS. HUBBARD AND IMSELF WERE OUTSIDE WALKING ON ROCK ST. WHEN HE EARD APPROXIMATELY (10) TEN GUNSHOTS.

MR. HOLLOWAY SAID SEVERAL SECONDS LATER HE W A BLACK MALE RUNNING FROM AROUND THE CORNER ONE OF THE APARTMENT BUILDINGS. MR. HOLLOWAY SAID OBSERVED THE BLACK MALE CARRYING A CHROME EMI-AUTOMATIC PISTOL IN HIS RIGHT HAND. MR. HOLLOWAY AID THAT WHEN THE BLACK MALE TURNED THE CORNER OF HE BUILDING AND BEGAN TO RUN IN FRONT OF THE UILDING HE RECOGNIZED THE MAN TO BE A PERSON E KNEW AS "CHARLIE G".

MR. HOLLOWAY SAID THAT HE WATCHED "CHARLIE G" TIL HE RAN OUT OF SIGHT DOWN ROCK ST. HOLLOWAY SAID THAT MS. HUBBARD AND HIMSELF THEN WENT OUND THE BUILDING TO CUMBERLAND ST. WHERE HE SAW ARK BROWN LYING ON HIS BACK.

THROUGH INFORMATION LOCATED IN THE L.R.P.D COMPUTER YSTEM, IT WAS DETERMINED "CHARLIE G" REAL NAME WAS HARLES ALEXANDER.

MR HOLLOWAY WAS SHOWN A STANDARD L.R.P.D. PHOTO PREAD WHICH CONTAINED (6) SIX BLACK MALES. MR. HOLLOWAY IADE AN IMMEDIATE POSITIVE IDENTIFICATION OF HARLES ALEXANDER, THE PERSON HE KNOWS TO BE HARLIE G." MR. HOLLOWAY SAID THAT HE IS OSITIVE THAT CHARLES ALEXANDER IS THE MAN HE SAW UNNING WITH A CHROME-SEMI-AUTO PISTOL SECONDS

OFFICER'S REPORT

TE: 1-9-97                    SUBJECT: Homicide - 2817 S. Cumberland

: Sgt. Corbin                                      97-4304

OM: Officer Linda Hudson #13146

Sir ~

On this date, at approximately 2120 hours, Officer
-ff Holt and I responded to a Shooting Call at 2817 S.
umberland. Upon our arrival, there was a black male
subject, later identified as Mark Brown (D.O.B. 11-12-77),
lying on his back on the sidewalk in front of 2817 S.
umberland.

James Fairchild (B/M, 9-19-74), who is the brother of Brown,
said that he witnessed the Shooting. Fairchild said that he
was entering a 1985 Monte Carlo (AR License 517AFK) which
was parked outside the residence at 2817 S. Cumberland, when
n unknown black male subject came around the north
side of the apartment building and started Shooting at
Brown. Fairchild said that the unknown black male subject
fired several shots, at least one of which struck Brown.
Fairchild said the suspect then fled the area in an easterly
direction behind the apartment building. Fairchild described
the suspect as a black male, 6'2", 200 lbs, with a low hair
cut. Fairchild said the suspect was wearing a blue sweat
shirt, a black leather jacket, and a hood.

Penny Holloway (B/M: 3-19-76) said he saw the suspect
as he was running behind the apartment building.

SIGNATURE:

NTE: Use this form for all written reports to your Supervisor. Use additional paper of the same size if needed.

## OFFICER'S REPORT

1-9-97          SUBJECT: Homicide — 2817 S Cumberland

Sgt. Corbin                                          97-4304

t: Officer Linda Hudson #13166

Fairchild said the suspect had a chrome or silver
ge Cal. semi-auto hand gun.

M.E.M.S. and Rescue responded to the scene. M.E.M.S.
insported Brown to U.A.M.S., where he was pronounced
ead. Brown suffered one gunshot wound to the back and
1e to the buttocks.

A broadcast was made of the suspect's description:
veral officers, as well as Air One, circulated the area to
ok for the suspect with negative results.

The D.O. And Crime Scene responded. Crime Scene
ollected evidence.

Respectfully,

SIGNATURE: Linda Hudson

OTE:  Use this form for all written reports to your Supervisor.  Use additional paper of the same size if needed.

:0008'        11/01/1996

**** LITTLE ROCK POLICE DEPARTMENT ***
INCIDENT #:1996-  190329              INFORMATION REPORT              LRN:

EXHIBIT
28

|  | INC | INC | TYPE |
|---|---|---|---|

.DENT: ROBBERY-STREET-OTHER WEAPON        DATE: 12/29/1996  TIME: 06:30:00   CALL: ROBBERY-STREET-OTHER WEAPON
D      CALL        UNIT                                                      DISTRICT
E: 12/29/1996  TIME: 16:32:51  ASSGN: 2X43  PREM:                           OCCURRED:
RESS OF INCIDENT.: 2114 MCALMONT ST                          APT:
TIM BUSINESS NAME: ALEXANDER,CHARLES
..............................................................................

SUBJECTS CLASS: VICTIM
NAME: ALEXANDER,CHARLES
RACE: BL   SEX: M   DOB: 10/06/1978   HGT:     WGT:     HAIR-COLOR:        EYE-COLOR:
ADDRESS: 911 E 21ST  LR
HOME PHONE: 376-9703   TYPE:        DRIVERS-LIC-#:            STATE: UN   SOC-SEC-#:
WORK PHONE:   -     SCARS,MARKS,ALIASES:
INFO!LOCATION OF WEAPON,ETC:
CLOTHING DESC--HAT:        COAT:        SHIRT/BLS:        PANTS/DRESS:        SHOES:
..............................................................................

DEFENDANT'S
EXHIBIT
NO. 14
MEAD-Bayonne, N.J.

SUBJECTS CLASS: SUSPECT
NAME: DEAN,DAVID
RACE: BL   SEX: M   DOB: 09/10/1977   HGT: 511   WGT: 190   HAIR-COLOR:        EYE-COLOR:
ADDRESS: 2001 S MAIN  ST  LR
HOME PHONE:   -     TYPE:        DRIVERS-LIC-#:            STATE: UN   SOC-SEC-#:
WORK PHONE:   -     SCARS,MARKS,ALIASES: JAMAR
INFO!LOCATION OF WEAPON,ETC:
CLOTHING DESC--HAT:        COAT:        SHIRT/BLS:        PANTS/DRESS:        SHOES:
..............................................................................

JECTS CLASS: SUSPECT
NAME: WALKER,ANDRE
RACE: BL   SEX: M   DOB: 09/08/1976   HGT:     WGT:     HAIR-COLOR:        EYE-COLOR:
ADDRESS: 2004 CUMBERLAND
HOME PHONE:   -     TYPE:        DRIVERS-LIC-#:            STATE: UN   SOC-SEC-#:
WORK PHONE:   -     SCARS,MARKS,ALIASES: JAMAR
INFO!LOCATION OF WEAPON,ETC:
CLOTHING DESC--HAT:        COAT:        SHIRT/BLS:        PANTS/DRESS:        SHOES:
..............................................................................

VEH-CLASS: STOLEN
                    VEH    VEH                          VEH    VEH
CLR: BLK    /       YR: 1976 MAKE: CHEV                 MDL: IMP STYLE: 4D
LIC      LIC      LIC              LIC
YR: 1997  STATE: AR  PLT #: 419ADE      TYPE: PC              VIN:
SPECIAL MARKING
REMARKS:                                              SRN#:            NIC#:
..............................................................................

VEH-CLASS: IMPOUNDED
                    VEH    VEH                          VEH    VEH
CLR: BRO    /       YR: 1976 MAKE: CHEV                 MDL: IMP STYLE: XX
LIC      LIC      LIC              LIC
YR: 1997  STATE: AR  PLT #: 121AIF      TYPE: PC              VIN:
SPECIAL MARKING
REMARKS:                                              SRN#:            NIC#:
..............................................................................

CER NAME/NUMBER          DATE       TIME       SUPERVISOR APPROVING REPORT
    DMONSON,BENJIE JACKSON      . 12/29/1996  16:32:51
L-SMITH,JOHN WAYNE
..............................................................................

ESTIGATOR NAME/NUMBER          SUPERVISOR              CASE STATUS:
:30-

EXHIBIT
29

RRI 047 Little Rock, 12/21/96
7900 Scott Hamilton Dr.
Little Rock, AR 72209
(501)562-2694

CHARLES ALEXANDER
921 ABIGAL DRIVE
LITTLE ROCK, AR 72209

| Arrival | 12/20/96 | | Reg # | 24797 | | | |
|---------|----------|--|-------|-------|--|--|--|
| | | | Conf # | 0470088424 | | | |
| Departure | 12/21/96 | | Room | 201 | Person(s) | 2 | |
| FOLIO | 121984 | | | | | Page | 1 |

| | | | | | |
|--|--|--|--|--|--|
| 12/20 | ROOM CHARGE ->2BED | | 201 | 47.99 | 47.99 |
| 12/20 | State Tax-Rm | | | 3.84 | 51.83 |
| 12/20 | City Tax-Rm | | | 0.96 | 52.79 |
| 12/20 | Cash | | | -52.79 | 0.00 |
| | | | Balance | 0.00 $ | |

EXHIBIT
30

98

(THEREUPON, the proceedings continued in Open

Court, as follows:)

BY MR. WHITE:

Q    "JJ," I'll show you what's been marked for identification

as State's Exhibit 1, and ask you if you recognize that?

A    Yes, sir.

Q    Okay.  And State's Exhibit, what's been marked for exhibit

and identification as State's Exhibit 2, do you recognize that?

A    Yes, sir.

Q    What's pictured in State's Exhibit 1?

A    The red jacket my little brother was wearing, and that's

my jacket on the side of him.

Q    Okay.  And what's pictured in State's Exhibit No. 2?

A    The red, same red jacket, my jacket and my car.

Q    Okay.  And are those in the same position as they were the

night that Marquis was shot after they took him?

A    Yes, sir.

Q    Okay.

                MR. WHITE: I'd offer Exhibits 1 and 2, Your Honor.

                THE COURT: Any other objections, counsel?

                MR. TRIMBLE: No, Your Honor.  Other than what's

        previously been noted.

                THE COURT: All right.  They'll be received.

                (THEREUPON, State's Exhibits No. 1 and 2 were

        received in evidence and made a part of the record

362

EXHIBIT
31

STATE'S EXHIBIT NO. 2 (Crime scene photograph)

(ATTACHED TO ORIGINAL TRIAL TRANSCRIPT)



EXHIBIT
32

370

STATE'S EXHIBIT NO. 8 (Red jacket)



, TRANSCRIPT)

STATE'S
EXHIBIT
8

11

for proof of other acts.

THE COURT: Well, that's what I'm saying.  The
other bad act that would be excluded under-- The reason
that 404(b) comes into play is to exclude other wrongs,
crimes, bad acts, so forth.

MR. WHITE: Correct.

THE COURT: But the other bad act involved in it
would be the threat to Mr. Dean?

MR. WHITE: That's correct.

THE COURT: I guess that's what it's---

MR. WHITE: The statements made that he wasn't
going to let him get away with it.  He was going to
get him back.

THE COURT: Okay.  Anything further you wish to say
in this regard, Mr. Trimble?

MR. TRIMBLE: Your Honor, I would be objecting to
the coat even coming in unless there's some foundation
that this coat belonged to David Dean, but David Dean
is not the victim in this case.

THE COURT: Okay.

MR. TRIMBLE: I would object to the coat coming in
for certain.

THE COURT: All right.  Counsel, looking at 404(b),
also at 403, it appears that there would be a valid
connection to this case and a valid reason come in

12

mainly to prove motive which is one of the listed
subjects in 404(b).  It appears that it generally
would, if proven by the State, these matters could
prove motive in the matter, that it would have
relevance.  Also looking at 403, the probative value
versus the prejudicial effect, I feel that any unfair
prejudicial effect would be far outweighed by
probative value so, yes, counsel, it would be
admissible with what the Court knows at this time.

MR. TRIMBLE: Your Honor, what about the statement
that the coat belonged to a third party, not the
decedent?

THE COURT: I don't know what you're talking about.
What statement that the coat belonged to a third party?

MR. TRIMBLE: I think that's the State's contention
is that the decedent was wearing a coat that belonged
to David Dean.

THE COURT: That's what they say.

MR. TRIMBLE: And that's why they say, what the
State's contention is, that this was a mistake of
who was being shot.  And I believe that the coat is not
connected to the decedent.  There's no foundation that
I understand that the coat should come in, so I'm
asking that the coat not be allowed to be introduced as
evidence and not spoken about unless it's here, and a

13

foundation's laid for it to be introduced.

THE COURT: All right.

MR. WHITE: Judge--

THE COURT: Counsel, you're asking me to rule in advance on a fact question that I haven't heard the facts on.  You're saying that I ought to keep the coat out because there's no proper foundation to show that the coat belonged to David Dean.  I can't rule on that in a vacuum.  I'd have to hear the evidence in that regard before I determine the admissibility.  Of course if it's not admissible, we won't admit it.

MR. TRIMBLE: Judge, I'm just trying to address the fact that this is a murder case.  It's a lot of disjointed elements, and I'm just trying to clear it up if I can.  So I want to take the case straight to the jury and not get it muddied up with all these other outside factors.

THE COURT: Well, I understand and appreciate that, counsel, but I can't rule in advance on fact questions that are not before the Court in the way of testimony.

MR. TRIMBLE: All right.

THE COURT: All right, sir.  What other motions do we have?

MR. TRIMBLE: Your Honor, I don't know if the State intends to introduce photographs of the decedent, but

EXHIBIT
33

153

there.

A      Uh huh (Meaning yes).

Q      And then you number 'em correspondingly on the drawing?

A      Right.  I use a reference point, a permanent point as the corner of that building.  It's noted by the blue circle.  Then I took measurements west and south of that point so we can exactly locate 'em.

Q      Okay.  And I want to ask you, when you take these notes, you assign particular numbers to pieces of evidence, right?

A      Yes, I do.

Q      And the red jacket that we've talked about that was in Exhibit 4, did you collect that?

A      Yes, I did.

Q      Did you bring it with you?

A      Yes.

         (THEREUPON, out of the hearing of the jury, the following conversation took place between counsel and the Court:)

         MR. TRIMBLE: I'm going to object to the red jacket being introduced.  We don't know whose jacket that was.  Anyone could have brought the jacket up and laid it on this man.

         THE COURT: All right.  He identified it as where he found it at the scene.  Go ahead, sir.

         (THEREUPON, the proceedings continued in Open

154

Court, as follows:)

THE COURT: Just one second, counsel.  Come up.

(THEREUPON, out of the hearing of the jury, the following conversation took place between counsel and the Court:)

THE COURT: Since you're going to open the package, I suggest that you open the package and label each thing that comes out of it individually.  That way the record will be clear as to what's what.

MR. WHITE: Thank you.

(THEREUPON, the proceedings continued in Open Court, as follows:)

BY MR. WHITE:

Q     Mr. Holloway, do you recognize this big old box I'm showing you?

A     Yes, I do.

Q     What is that?

A     It's where I put all the items and designated as E-4, a coat, two shirts, a hat and a CD with blood.

Q     Okay.  All right.  And I want you to open that up if you would, and I'm going to ask you about a particular item of evidence there.

A     Okay.

Q     You got your pocket knife with you?

A     Yes.

155

Q     Did you seal that up, or how was that sealed up?

A     That has my seal on it, and it hasn't been broken.

Q     So, what you do is you pick it up out there at the scene,
then do what with it?

A     Bring it back to our lab, and since it was damp out there
at the scene, plus there was what appeared to be blood on it, we
have to put 'em in a secure area that we have set aside
specifically for that, and we have to let it dry.  And then
'cause if you put it in there wet, it'll decompose.  So, we let
it dry, and then I secure it in the box.

Q     And one of the items you listed was a red jacket.  Is that
in there?

A     Yes.

Q     And before you take all that out, would you bring it over
here and let the Court Reporter mark it, please, sir.

A     (Witness complies with request of counsel).

          MR. WHITE: Did you not see this before?

BY MR. WHITE:

Q     And so that's what's marked as State's Exhibit 8 for
identification.  Do you recognize that?

A     Yes, I do.

Q     Is it in about the same condition as it was when you
collected it?

A     Yes.

          THE COURT: Counsel, just one minute.  Let's put

156

this sticker on the box.

MR. WHITE: Okay.

THE COURT: The box is No. 9.  It will help keep everything straight.

THE WITNESS: Is it all right if I bring it around here?

BY MR. WHITE:

Q     Yes, sir.

THE COURT: You may proceed.

THE WITNESS: It's in the same condition except now it's dry.

MR. WHITE:

Q     Okay.  And it's been wadded up, hasn't it?

A     Yes.

Q     Now, I know they see you have those gloves on.  Did you bring an extra pair of gloves in the event anybody on the jury wants to handle that piece of evidence?

A     Yes, I have one extra pair.

Q     All right.  Okay.  So, would you set those gloves with that jacket, and you can just put that down.

A     Okay.

MR. WHITE: And I'd offer Exhibit 8, Your Honor.

MR. TRIMBLE: No objection, Your Honor.

THE COURT: It's received.

(THEREUPON, State's Exhibit No. 8 was received in

OFFICER'S REPORT

EXHIBIT
34

+ Cockrell

6'

BLK LEATHER JACKE

James Fairchild   9-9-74

209 E. 22ND

LR, AR.      372-2978

SHOTS 6 OR 7
AT LEAST

VIC MARK BROWN   19
NOV. 12, 77
KFC MAIN ST.

Jamar & Shelly
CAME OUTSIDE TO GET CD OUT
Jamar's CAR.

SOUTH END PROJECT

6 OTHER PEOPL

FATHER
Theotis Brown
MOTHER Blondee Brown

1-9-57

2ND OR 3RD APARTMENT

→ LAQUITA JUST GOT BACK FROM
ILL.

C

EXHIBIT
35          5

MS. REECE: I'd call LaQuita Butler to the stand.

THEREUPON,

LaQUITA BUTLER, a witness having been called previously by and on behalf of the Defense, and having been previously sworn, was recalled and testified, as follows:

RE-DIRECT EXAMINATION

BY MS. REECE:

Q       Good morning, Ms. Butler.

A       Hi.

Q       Please state your name for the record.

A       LaQuita Lavonne Watson.

Q       Okay.  And where do you reside?

A       Seventy-four fourteen Mabelvale Pike, Apartment 24.

Q       Okay.  And you're employed at Commercial Mail.  Is that correct?

A       Uh huh.

Q       Okay.  Do you remember when you came before this Court and testified back in July of 1997?

A       Uh huh.

Q       Do you recall that Don Trimble had represented the Defendant?

A       Yes.

Q       Okay.

A       Uh huh.

Q       Did he talk to you at any point prior to you getting on

6

the stand and testifying?

A     No.

Q     So, if he had testified previously that he had talked to you before you testified, would that be untrue?

A     Yes, it is untrue.

Q     Okay.

          MS. REECE: I don't have any other questions.

          MR. WHITE: No questions, Your Honor.

          THE COURT: All right.  You may be excused, ma'am.

          (THEREUPON, the witness was excused from the Rule.)

          MS. REECE: Your Honor, I'd call Mr. Trimble to the stand.

THEREUPON,

          DON TRIMBLE, a witness having been previously called by and on behalf of the Defense and having been previously sworn, was recalled and testified, as follows:

          RE-DIRECT EXAMINATION

BY MS. REECE:

Q     Good morning, Mr. Trimble.  Would you please state your name for the record?

A     Don Trimble.

Q     And were you an attorney who previously represented Charles Alexander at trial in July of 1997?

A     I was.

EXHIBIT
36

77

at the time.

Q      I see.  Okay.  Thank you, ma'am.

A      Uh huh (Meaning yes).

             MISS THOMAS: We have nothing further.

             THE COURT: You may be excused, officer.

             (THEREUPON, the witness was excused from the

      Rule.)

             MR. WHITE: LaQuita Butler.

THEREUPON,

             (LAQUITA BUTLER) a witness having been called by

and on behalf of the State, being first duly sworn, was examined

and testified, as follows:

             DIRECT EXAMINATION

BY MR. WHITE:

Q      LaQuita, would you introduce yourself to this jury,

please.

A      My name is LaQuita Butler.

Q      Okay.  And now, LaQuita, we've called you away from work,

haven't we?

A      Uh huh (Meaning yes).

Q      Okay.  And do you remember?  You were living in Little

Rock back in January of 1997, right?

A      Uh huh (Meaning yes).  I had just came back from out of

town.

Q      Okay.  You'd been living out of town before then?

78

A      Uh huh (Meaning yes).

Q      And you moved back here, and were you living somewhere around the Amelia B. Ives Housing Project?

A      Uh huh (Meaning yes).

Q      South end?

A      Yeah, I stayed probably about two or three blocks away from there.

Q      Okay.  And the night of January the 9th, 1997, do you remember that very well?

A      Yeah.

Q      Okay.  And do you remember Marquis Brown getting shot?

A      Yeah.

Q      Before Marquis was shot, where had you been, what had you been doing?

A      We had been in the house just listening the music, and talking and stuff.

Q      And you say we.  Whose house, whose apartment was that?

A      Shelly Gulley's.

Q      And is she a friend of yours?

A      Yeah, my best friend.

Q      Okay.  And her boyfriend is who?

A      Jamar Dean.

Q      Okay.  And they call him Baby Dean.  Is that right?

A      Yeah.

Q      Okay.  And did you know Marquis?

EXHIBIT
37

172

THE COURT: Yes, sir.

(THEREUPON, out of the hearing of the jury, the following conversation took place between counsel and the Court:)

MR. WHITE: Judge, Detective Ray is here.  He is the detective who was involved in the investigation of this crime that we're trying today as well as was assigned to the case where the Defendant said his car got taken by Jamar Dean.

THE COURT: Uh huh (Meaning yes).

MR. WHITE: And I have been assuming that we, that we were on the same, Mr. Trimble and I were on the same wavelength about Detective Ray testifying about what the Defendant told him about the car getting taken.   And it's my understanding Mr. Trimble says that he hadn't ever seen any of this stuff.  I know we've talked about it on the phone, but he may not have seen some of these things.  I don't know.  They were with the file that I had in my office, but they were not part of the same file.

MR. TRIMBLE: That's just why.  That's why-- Your Honor---

THE COURT: I don't understand.

MR. TRIMBLE: Your Honor.

THE COURT: Why are you wanting to introduce

173

Detective Ray to testify as to a statement given by the
Defendant?

　　MR. WHITE: About his car being taken.  That's
right.

　　MR. TRIMBLE: A totally unrelated incident, Your
Honor.  I have a statement in the file from Detective
Ray about this case, and I thought that's why he was
being called, but it turns out he's being called about
an unrelated case that they're trying to use some kind
of motive or something.  So, I haven't seen this.  I
don't know anything about this.  I'd be opposed to it.

　　THE COURT: Have you had a copy of this statement
in your file?

　　MR. TRIMBLE: It's different from ---

　　THE COURT: One second.  Have you had a copy of
this statement in your file?

　　MR. WHITE: It has been in a file with this file,
but hadn't been in this same file.  They've been
together.

　　THE COURT: Did you supply it to the Defense during
discovery?

　　MR. WHITE: I guess I didn't, Your Honor.

　　THE COURT: Then how do you think you can use it
if it hasn't been in your file having an open file
policy, or you haven't provided it during discovery?

174

How do you think it's admissible at this point?

MR. WHITE: Well, I think we've talked about it,
and Detective Ray is here.  If he wants to talk to him
before we go---

THE COURT: Counsel, have you provided documents
prior to trial, during discovery, either by placing it
in the file of this case or by providing Defense a
copy of it?  Did you do that?

MR. WHITE: No, sir.

THE COURT: So, you're wanting to proceed with it
with the Defendant being totally surprised with it?

MR. WHITE: No, sir, I'm not.  The Defendant's not
totally surprised, neither is his lawyer.  He knows
that this is the basis of the motive.  We've talked
about it on the telephone, and we've been talking about
it prior to this date, and the Defendant knows what he
told the police, and so it's no surprise to him.  Now,
if the fact that Detective Ray is going to testify---

THE COURT: Well, we'll need to have a hearing on
it outside the presence of the jury.

(THEREUPON, the proceedings continued in Open
Court, as follows:)

THE COURT: Ladies and gentlemen of the jury, it is
your duty not to permit anyone to speak or communicate
with you on any subject connected with the trial.  Any

attempt to do so should be immediately reported by you
to the Court.  You should not converse among yourselves
on any subject connected with the trial, or form or
express any opinion thereon until the cause is finally
submitted to you.  Ladies and gentlemen, I need to work
with the attorneys for a minute.  So, I would ask if
you wouldn't mind to step down out the jury box, and
outside the Court Room and just generally remain in the
area.  We'll let you know when we're ready to proceed.
So, the jury is excused.  Counsel, please remain.

      (THEREUPON, the jury was excused, but the
proceedings continued in Open Court, as follows:)

      THE COURT: The jury having exited, Mr. Trimble,
do you want to state what your motion is at this point,
sir?

      MR. TRIMBLE: Your Honor, I would move to exclude
any testimony concerning a case file that I have seen
nothing about.  In talking to Mr. White, we discussed
his basic theory of the case.  We discussed that I was
saying that my client couldn't have did it, 'cause he
wasn't there.  We talked about the basketball game,
but other than that, I thought that Detective Ray-- He
is in the case file as one of the individuals that
went to the crime scene, and that's the only thing that
I was under the impression that he was going to be

testifying about.  Mr. White now tells me that he has a

file that was separate and apart from the murder file

that has a statement in it by Charles Alexander, and I

have never seen this statement.  And I'd be opposed to

any testimony concerning that based on the fact that

it's total surprise to the Defense.

THE COURT: It's my understanding from the State

that this statement of the Defendant is not in your

file that was open to the open-file policy?

MR. WHITE: That's correct, Your Honor.

THE COURT: And it was not provided to the

Defendant prior to trial?

MR. WHITE: I suppose that's right.

THE COURT: Defendant has filed a formal motion for

discovery.  The only thing I have following that from

the State was notice of intent to use evidence of other

crimes, wrongs or acts.  That notice not stating out

what the evidence is or the nature of it, other than

the State intends to introduce evidence of other

crimes, wrongs or bad acts committed by the Defendant

to show the Defendant's motive, intent, preparation,

plan, knowledge, identity, or absence of mistake, or

accident.  No reference to what the evidence might be.

MR. WHITE: Pardon me?

THE COURT: There's no reference in the notice of

what the evidence might be.

MR. WHITE: I understand.  Mr. Trimble and I did talk about that on the telephone.  I understand that's not part of the file, but just for -- In real life it's not a surprise to the Defense.

THE COURT: In real life, counsel, when you have an open-file policy, everything you intend to introduce at trial should be contained in that open file.  If not, it should be provided directly to Defendant, especially when it's something as serious as a statement of the Defendant.  All right.  Anything further from either side?

MR. WHITE: Judge.

THE COURT: I'm going to take 10 minutes and take a look at it.

MR. WHITE: Yes, sir.  This is a statement of the Defendant as a victim, where he's alleging that this guy beat him up and took his car.  He's known about it, and his lawyer's known about it.

THE COURT: Counsel, if it wasn't incriminating, it would be hearsay.

MR. WHITE: Pardon me?

THE COURT: If it wasn't incriminating or prejudicial to the Defendant, it wouldn't be relevant for the State to introduce it.  It is a statement of

EXHIBIT
38

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

STATE OF ARKANSAS,                                          PLAINTIFF,

VS.                            NO. CR-97-1450

CHARLES E. ALEXANDER,                                       DEFENDANT.

## MOTION FOR DISCOVERY

Comes now the Defendant, by and through his attorney, Don Trimble, and for his Motion For Discovery states:

1. That the Prosecuting Attorney should make available to Defendant's attorney all material discoverable under Rules 17.1, 17.3, and 17.4 of the Arkansas Rules of Criminal Procedure.

2. That the Prosecuting Attorney is requested to treat this as a continuing obligation for disclosure in accordance with Rule 9.2 of the Arkansas Rules of Criminal Procedure.

3. That the Prosecuting Attorney should be required to file written response.

Respectfully submitted,

Don Trimble, Attorney for Defendant
1124 Dr. Martin Luther King Jr. Dr.
Little Rock, Arkansas  72202
(501) 376-8024

## CERTIFICATE OF SERVICE

I, Don Trimble, do hereby certify that a copy of the foregoing motion has been placed in the U.S. Mail, with postage sufficient to effectuate delivery thereof to: W.A. McCORMICK, Deputy Prosecuting Attorney, 201 S. Broadway, Little Rock, AR 72201, on this 8th day of May, 1997.

Don Trimble

EXHIBIT
39

157

evidence and made a part of the record hereof.)

BY MR. WHITE:

Q    And that was Exhibit 4, and you've marked it on the CAD drawing, right?

A    I think it's Exhibit 8.  It's E-4 on the drawing, yes.

Q    Right.  E-4 on the drawing.

A    Right.

Q    And Exhibit 8 for purposes of our trial here.  And you've marked it there, and right there next to E-3 was what?

A    It's the small blood pool.

Q    Okay.  Now, I want to switch gears for a minute and ask you if you brought what you marked as your property tag 115683? It's a box containing several items.

A    Yes.  It's right here.

Q    Okay.  May I see that and have it marked, please, sir?

A    Yes.

Q    So, you recognize what I have marked as State's Exhibit 10.  Is that right?

A    Yes.

Q    And what's in that box, Mr. Holloway?

A    Items E-5, 6, 7, 8, 9, 10, 11, 12, and 13.  They are nine, I believe that's right, nine millimeter Luger Remington-Peter hulls.

Q    Okay.  And could you open that up, and examine those and determine whether or not they're in the same condition as they

EXHIBIT
40

169

## CROSS EXAMINATION

BY MR. TRIMBLE:

Q     Mr. Monroe, if you examine the shell casings, could you determine what kind of gun?

A     I did not examine the shell casings.  They were submitted, but I did not examine those.

Q     And why not?

A     Sir?

Q     Why not?

A     They were submitted on the 17th of this month at a time in which I had two of my examiners out, and the state legislators didn't see fit to fund my section enough to get the number of people.  And I had 550 cases backlogged.  Many cases to which I had priorities.

Q     If you examined the shell casings, could you determine the type of gun that they were fired from?

A     Some cases we can; however, when it comes to the nine millimeter, it would have to be within a narrow range if I could have told the type of firearm it was fired was.

Q     Okay.

A     Depending on the primarily the firing---

Q     Okay.

A     Excuse me.  Firing pin marks.

Q     The slug that you did examine, you determined that it was a nine millimeter gun that it came from?

or Eleanor Brown, conviction brought
o closure to her son's murder. She fears
e wrong man is in prison. Prosecutors
iy the case was sound and decision just.





EXHIBIT
41

Arkansas Democrat-Gazette/STEPHEN B. THORNTON

Irown (right) and Dianna Anderson stand near the spot where
on, Markevius Brown, was gunned down in January 1997. Ander-
Charles Alexander Jr., has been convicted of the crime, but both

women say police have the wrong man. The two mothers recently met at the
Amelia B. Ives Homes to pray together (top photo) in hopes that Alexander
will be released one day.

# )NE MOTHER'S BURDEN

BY CHRIS OSHER
ARKANSAS DEMOCRAT-GAZETTE

ior Brown still remembers the call
got that night at the poultry pro-
ing plant.
the telephone, her fingers still
grip, to learn a flurry of bullets
to her son in front of a Little
housing complex.
ent numb," she recalls.
er, another image haunts her.

to escape justice.
Brown saw an in-
nocent one.
Now, she lies in
bed at night, praying
that the Arkansas
Supreme Court,
which could take up
to a year to rule on
his appeal, will over-

but in order to prove it's the wrong guy,
you've go to climb a pretty steep hill," says
White, who was working as a deputy prose-
cuting attorney for Pulaski County.
"In this particular case, 12 people found
beyond a reasonable doubt that it was the
right guy, based on a lot of eyewitness testi-
mony, circumstantial evidence, motive and
all those things that go into that."

ll' casings strewn across the

esses told police someone
med down the 19-year-old,
s Marquis to his family and
shooting him after he got a
disc from a friend's car.
e time, his mother was in-
chicken at the Tyson Foods
North Little Rock.
news," her supervisor said,
er from her job.

youngest child, "Theodis
r, the one she calls "Little
old her Marquis had been
en she arrived at Universi-
tal, she found her husband
ed, pacing.
t happened to Marquis?"
d.
usband shook his head.
lidn't make it."
Brown, the shooting took
son who used to write her
tell her jokes.
very day, before she left for
own, now 46, had told him
way from gangs. She knew
y cars and pagers enticed
ll, at her urging, he had
school, kept a job at Ken-
ied Chicken and talked of
d of seeing her son turn his
nd, Brown would see him
st time in a casket, would
he funeral home had to re-
face because his nose had
ken when he fell.

## HE OTHER MOTHER

a year before the killing
is, Dianne Anderson sent
Charles, then 17, and An-
15, to live with their father.
ng two jobs, she didn't have
re for her sons. Her sched-
ous driver for Little Rock
ad a home health aide at
a tiring endeavor.
her's house at 911 E. 21st
ideal. Gangs were so
that one group had incor-
e street into its name: the
Posse.



Arkansas Democrat-Gazette/STATON-BREIDENTHA

**Charles Alexander** is escorted out of the Little Rock police
station after his arrest in the slaying of Markevius Brown in
January 1997. Alexander was later convicted of murder
and sentenced to life without parole. Though Brown and

Alexander were friends, police say Alexander fired th
shots that killed Brown. Investigators believe, based o
witness statements, that Alexander was aiming at some
one else.

"I started calling and always
hearing they had company or had
been out late," recalls Anderson,
now 41.

A basketball player who was
considered one of the top Little
Rock prospects in junior high
school, Charles Alexander had har-
bored dreams of snagging a scholar-
ship to play at a college.

But in a letter to his lawyer,
Alexander, now 22, says his plans
were dashed when he got a girl
pregnant.

He began taking jobs from a la-
bor finder's agency and "selling
dope" on his days off, the letter
says. And soon, he began attracting
the attention of police.

On Dec. 23, 1996, Little Rock po-
lice found a Mazda 626 that had
been reported stolen. They stopped
the car at an intersection near Ash-
er Avenue at 3:25 a.m. Inside, po-
lice found Alexander, who was
driving, and a 15-year-old boy.

Alexander eventually would re-
ceive probation on felony charges of
terroristic threatening and theft in

connection with that arrest. But for
now, he posted bond and was re-
leased. Six days later, tensions
flared at a basketball game at Pett-
away Park. Alexander and 19-year-
old David "Jamar" Dean, whom po-
lice knew from a host of charges
ranging from robbery to possession
of drugs, exchanged words.

Dean, wielding a broomstick,
beat Alexander and stole his car,
the police report states.

To police and prosecutors, that
fight led to Brown's shooting.

They don't dispute that Alexan-
der and Brown were best friends.
Alexander killed for sure, they say,
but he killed the wrong person.

Jamar Dean was attending a
gathering that night. Others were
there, including Marquis Brown.

"Alexander lay in wait, according
to prosecutors, until he saw some-
body go to Dean's Impala. They say
Alexander watched the person
reach into the car.

And then, prosecutors say, he
fired — again and again."

## JURY CONVICTS

Early the next morning, when po-
lice hauled Alexander in as a sus-
pect, he said he knew nothing of the
killing. He was at home, he told de-
tectives, watching the TV program
*New York Undercover* when visitors
dropped by.

Four people said they were with
Alexander that night: two neighbor-
hood girls who lived at Little Rock
Job Corps Center, his brother, and
his brother's girlfriend.

Alexander may have offered an
alibi, but the police had something
else. They had three witnesses who
placed him at the scene with a gun.

"He was afforded every protec-
tion that the Constitution and that

ed, the mothers say. They stress th
no physical evidence linke
Alexander to the crime.

"I just feel like a lot of thing
don't match up," Brown says.

Months after the trial, Brow
went to the mailbox and found a let
ter, the first of many she would re
ceive from the man convicted o
killing her son.

More letters came, and she con
tinued to read.

"I can't stress my innocence
enough to you," Alexander wrote in
one.

One day in 1999, Brown's
youngest son, "Little Man," ap-
proached her. He said he had been
talking with friends in the neighbor-
hood. One of those friends was Perry
Holloway Jr., the prosecution wit-
ness.

Now, Holloway was saying
Alexander had been framed, her
son said.

That week, during her break at
the poultry plant, Brown wrote to
the man serving life in prison,
telling him she wanted to help.

Later, she wrote to the judge:
"I do not want an innocent per
son in jail for something he did not
do," Brown wrote. "So please give
this boy a chance."

Pulaski County Circuit Judge
John Langston held a hearing in the
fall of 1999 to review the conviction.

This time, Holloway took the
stand to give a new account, saying
he erred when he identified
Alexander as the killer.

LaQuita Butler-Watson, who had
been so sure she saw Alexander fir-
ing the gun, changed her testimony,
too. She might have made a mistake,
she said this time.

One of the original investigators
in the case, Little Rock police

# ARKANSAS
# e're here for you.

ne new Xerox Authorized Dealer for this area, we look forward
oviding you with affordable, world-class Xerox products and services.
o meet your business needs. We also offer the support and personal
tion you expect from a locally owned business.



The full range of Xerox products runs from selected
models of the renowned family of Xerox digital

FILED

MAR 1 8 1997

CAROLYN STALEY
CIRCUIT-COUNTY CLERK
ARKANSAS

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

__4th__ DIVISION

STATE OF ARKANSAS                                    PLAINTIFF

    vs.                        CR97-802

CHARLES F. ALEXANDER    BM                           DEFENDANT


### FELONY INFORMATION
#### COUNT   1

Larry Jegley, Prosecuting Attorney of the Sixth
Judicial District of Arkansas, in the name, by the authority, and on
behalf of the State of Arkansas charges CHARLES F. ALEXANDER
with the crime of violating Ark. Code Ann. 5-36-106 THEFT BY RECEIVING
committed as follows, to-wit:  The said defendant(s), in Pulaski
County, on or about December 23, 1996, unlawfully, feloniously, did
receive, retain, or dispose of stolen property of another person, in
excess of $2,500, knowing that it was stolen, or having good reason to
believe it was stolen, such being the property of Rita and Bobby
Williams, against the peace and dignity of the State of Arkansas.

*B*

#### COUNT   2

Larry Jegley, Prosecuting Attorney of the Sixth
Judicial District of Arkansas, in the name, by the authority, and on
behalf of the State of Arkansas charges CHARLES F. ALEXANDER
with the crime of violating Ark. Code Ann. 5-13-301 TERRORISTIC
THREATENING IN THE FIRST DEGREE  committed as follows, to-wit:  The
said defendant(s), in Pulaski County, on or about December 23, 1996,
unlawfully, feloniously, with the purpose of terrorizing another
person, did threaten to cause death or serious physical injury to
Officer Carrie Mauldin, against the peace and dignity of the State of
Arkansas.

*D*

EXHIBIT
42

PROSECUTOR NUMBER: 97-0385                          PAGE NUMBER   2.

## MISDEMEANOR INFORMATION

### COUNT   3

*A*

Larry Jegley, Prosecuting Attorney of the Sixth
Judicial District of Arkansas, in the name, by the authority, and on
behalf of the State of Arkansas charges CHARLES F. ALEXANDER
with the crime of violating Ark. Code Ann. 5-54-102 OBSTRUCTING
GOVERNMENTAL OPERATIONS committed as follows, to-wit:  The said
defendant(s), in Pulaski County, on or about December 23, 1996,
unlawfully, did obstruct, impair, or hinder, the performance of
officers of the Little Rock Police Department, a governmental
operation, to-wit: gave a false name and address, against the peace
and dignity of the State of Arkansas.

### COUNT   4

Larry Jegley, Prosecuting Attorney of the Sixth
Judicial District of Arkansas, in the name, by the authority, and on
behalf of the State of Arkansas charges CHARLES F. ALEXANDER
with the crime of violating Ark. Code Ann. 5-71-207 DISORDERLY CONDUCT
committed as follows, to-wit:  The said defendant(s), in Pulaski
County, on or about December 23, 1996, unlawfully, with the purpose to
cause public inconvenience, annoyance or alarm, or recklessly create a
risk thereof, did engage in fighting or in violent, threatening or
tumultuous behavior, against the peace and dignity of the State of
Arkansas.


Larry Jegley                    By
Prosecuting Attorney                 Deputy Prosecuting Attorney

Subscribed and sworn to before me on this 15 day of March, 1

Carolyn Staley                  By
Circuit Clerk                        Deputy Circuit Clerk



# Justice for Emmett

*Fifty years after the murder that changed
America, a new legal chapter has begun*



FIFTY years after Black America was traumatized by the lynching of 14-year-old Emmett Till in Money, Miss., tens of thousands of Americans from coast to coast will gather this month in solemn ceremonies, prayer services and protests to remember his heart-wrenching ordeal and to demand truth and justice.

In the weeks and months leading up to this 50-year marker, a crescendo of events revived interest in the case and made the Till lynching of 1955 one of the biggest stories of 2005. Perhaps one of the biggest developments is that the federal government reopened its investigation into Till's murder, exhumed his body and performed a long-delayed autopsy.

On August 28, 1955, Till was shaken awake, dragged from his bed and murdered in Money, Miss., allegedly for whistling at a White store clerk, Carolyn Bryant. The Chicago teenager was visiting his uncle who lived near Money,

EXHIBIT
43

August 2005

and his battered and brutalized body was found later floating feet-up in the current of the Tallahatchie River. He had been beaten, shot and his body weighted down with a portable cotton gin. Many key figures of the Civil Rights Movement have said that the murder of Mamie Till Mobley's only son galvanized and propelled the Civil Rights Movement. Rosa Parks has said she was thinking of the Till case when she refused to move to the back of a public bus in Montgomery, Ala.

And in a serendipitous twist, August 28, 1963, the date of Emmett Till's lynching in 1955—eight years later—was also the date of the historic March on Washington, which galvanized 250,000 Americans, 60,000 of them White, and the site of Dr. Martin Luther King's historic "I Have A Dream" speech.

Till's mother's decision to fight the state authorities and have his body shipped to Chicago and later displayed in an open casket so that the world could see what





Emmett Till's mutilated body was viewed by an estimated 200,000 people in Chicago. His mother insisted on an open casket so that the world could witness the horror of her son's lynching. At far left, the vault containing Till's coffin is loaded onto a truck following Till's exhumation in June.

they had done to her boy, also placed the state of Mississippi and its Jim Crow system of segregation on public display.

EBONY and Jet played major roles in this drama by publishing photos of Till's mutilated body. Later, an all-White jury acquitted the two men charged with Till's murder, Roy Bryant, the store clerk's husband, and his half-brother J.W. Milam. The men later confessed in media interviews that they had kidnapped and killed Till. Both men

have since died. Mamie Till Mobley died in 2003 after dedicating her life to keeping her son's memory alive and to pursuing justice.

Mississippi was called the "land of the Till murder" in the foreign press. Clotye Murdock Larsson, an EBONY reporter who covered the Till trial in 1955, now lives in a peaceful, flower-filled Stockholm suburb

Continued on Next Page



**EBONY editor Clotye Larsson** (above), who covered the 1955 Till trial, says today it was a "grotesque miscarriage of justice." Mamie Till Mobley (left, c.) celebrates in 1991 at unveiling of the Emmett Till Road street sign in Chicago. Joining her in the celebration (l. to r.) are Rosa Parks, Chicago Mayor Richard M. Daley and former Mayor Eugene Sawyer. Simeon Wright (below, l.), Till's cousin, greets family and friends at June re-interment ceremony for Till.

geous man I ever met."

Simeon Wright, Till's cousin, was sleeping in the same bed with Emmett Till when the boy was abducted. Now 62, Wright told a reporter he wants more than an apology from the state of Mississippi—he wants justice. He told the Chicago Defender: "This was the most brutal crime in this century and all you want is an apology? No, I want justice!"

—Joy Bennett Kinnon

## JUSTICE FOR EMMETT Cont'd

and says that she "trembles slightly when reminded of it."

She says the trial proceedings seemed surreal, adding, "this Southern drama, the tense and hateful atmosphere" crystallized into "one pure, shining moment" when Till's uncle, Moses Wright, took the stand to identify Till's kidnappers. "Moses . . . pointing his finger. Moses . . . the accuser. He was possibly the most coura-

